IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2021

**ALICE FAYE POWERS v. STEPHEN EDWIN POWERS**

**Appeal from the Chancery Court for Humphreys County**
**No. 2016-CV-224    Suzanne Lockert-Mash, Judge**

_____

**No. M2019-01512-COA-R3-CV**

_____

This is an appeal from a contested divorce involving one minor child.  The father appeals the trial court's decision to name the mother as the primary residential parent and its decision to grant the father less than equal parenting time.  For the reasons stated herein, we affirm the trial court's decisions and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Steven Shawn Hooper, Waverly, Tennessee, for the appellant, Stephen Edwin Powers.

Brandon E. White, Columbia, Tennessee, for the appellee, Alice Faye Powers.

**OPINION**

**I.    FACTS & PROCEDURAL HISTORY**

This child custody dispute stems from a divorce action between Alice Faye Powers ("Mother") and Stephen Edwin Powers ("Father") (collectively "Parents").  Parents share one minor daughter ("Child").  While this case stems from a divorce action, the issues on appeal only involve the permanent parenting plan for Child.

Parents were married in June 2013.  Prior to the marriage, Child was born in September 2012.  Parents and Child lived together until Parents separated in December 2016.  Mother worked only briefly during the marriage, and Father was the primary income

earner in the family. Parents experienced marital difficulties throughout the marriage, culminating in a physical altercation in the parking lot of a shopping center.

On December 4, 2016, Parents, Child, and Mother's minor son from a prior relationship were shopping for winter clothes. During their shopping trip, with the children present, Parents were engaged in a verbal altercation. Eventually, the altercation escalated and resulted in Father choking Mother by her throat. When the family returned home after shopping, Mother called the police and reported the incident. As a result of the altercation, Father pled guilty to domestic assault. Parents separated shortly after the incident and Mother initiated this case by filing a complaint for divorce.

In her complaint, Mother asserted several grounds for divorce, including inappropriate marital conduct and cruel and inhuman treatment. Mother requested that she be awarded spousal support, attorney's fees, and that she be designated as the primary residential parent of Child. In conjunction with her complaint, Mother also submitted a proposed parenting plan. In her plan, Mother proposed that she be named the primary residential parent of Child and that Father be awarded parenting time every other weekend.

On February 15, 2017, Father filed an answer to Mother's complaint and a counter-complaint for divorce. In Father's answer, he admitted to being arrested for physically assaulting Mother.[1] Prior to filing his answer and counter-complaint, Father submitted his own proposed parenting plan. In Father's proposed plan, he asserted that Parents should have equal parenting time and should both be named as primary residential parents.

After a hearing before the trial court, Parents agreed on several temporary matters. Pending a final haring, Parents agreed that Mother would be named as the primary residential parent. Parents also agreed that Father would have residential parenting time every other weekend, from Friday through Wednesday morning.[2] After several months of protracted litigation, a final hearing was set for March 26, 2019.

Eight days before the final hearing, Father filed another proposed parenting plan. In his new proposed plan, Father asserted that he should be designated as the primary residential parent and that Parents should share equal parenting time.

On March 26, 2019, the trial court held the final hearing. Through mediation, Parents had resolved several issues prior to the hearing, including division of personal property and marital debts. Mother, Father, and Child's paternal grandmother testified at

---

[1] Father pled guilty to the domestic assault on September 7, 2018, nearly nineteen months after filing his answer to Mother's complaint.

[2] Initially, Parents agreed that Father's parenting time would occur every other week from Friday through Sunday night and for two nights per week when Mother worked late. Prior to the final hearing, the court entered an order that clarified Father's time as every other weekend from Friday evening through Wednesday morning.

the hearing.

Mother's testimony focused on her marital struggles with Father, the changes to her life since their separation, and her relationship with Child. During the marriage, Child's maternal grandmother passed away from cancer. Mother testified that the events leading up to her passing were made more difficult by Father. Mother stated that when she took Child and her son to Florida (where the grandmother was living) to visit, Father was opposed to the trip, causing her additional stress and worry. After the maternal grandmother passed away, Mother testified that the family (including Father) drove all night from Tennessee to Florida to attend the funeral. To avoid further conflict with Father, Mother stated that the family stayed in Florida only "two or three hours" before returning to Tennessee. Mother also testified at length on the domestic assault incident by Father.

Although she did not work for the majority of Parents' marriage, Mother testified that she was the day-to-day caregiver for Child and the family. At the time Parents separated, Mother was working part-time as a retail employee. After Parents separated, Mother was offered a full-time position at another store. In an effort to reduce the commute to the new store, Mother asked the trial court for permission to change residences. The court granted Mother's request, and Mother moved to Columbia, Tennessee, where she currently resides with Child.

Mother also testified on Child's progression since Parents' separation. She stated that Child is enrolled in Kindergarten at a nearby school. According to Mother, Child enjoys the school, is successful there, and has made several friends. When Child is not in school, Mother stated that they enjoy activities such as going to the park and shopping together. Mother believed that Child was doing "very well" with the current parenting schedule, allowing Child to have a "solid place." In contrast, Mother testified that equal parenting time would not be best for Child because Father does not teach her responsibility and only focuses on fun activities. As a result, she stated that they should maintain the parenting schedule that allowed Father time every other Friday through Wednesday morning. Although Mother did not agree on Father's parenting style, she admitted that Father has a positive relationship with Child, is a loving Father, and is an active parent.

Father also testified at the final hearing. After Mother was granted permission to move to Columbia, Father also moved there. Father stated that his move was to ensure that he could be closer to Child. Since his new residence is close to Child's school, on days Father exercises parenting time, he stated that he is able to help transport Child to school. On weekends when Child is in Father's care, Father testified that they usually do fun activities such as going to water parks or museums. At various times, Father testified that he always tries to spend as much time as possible with Child and that they have a happy relationship together. In response to Mother's claim that he does not provide structure for Child, Father testified that Child does chores such as picking up her room and feedings the pets.

At the time of trial, Father stated that he worked as a manager of technical support, earning approximately $70,000 per year. As a manager, Father stated that he has flexible hours and can often work from home when he cares for Child.

In response to Mother's discussion on Parents' marital troubles, Father testified that Mother took several statements out of context. He also stated that when the maternal grandmother became ill, he supported Mother wanting to visit her in Florida. Additionally, he testified that when Mother first left to visit her family, Father simply inquired when she would return.

At the conclusion of the final hearing, the trial court issued an oral ruling. In its oral ruling, the court granted Mother a divorce on the ground of "cruel and inhuman treatment." The court also determined that the current residential schedule was in Child's best interest. Meaning, Father would continue to have parenting time with Child every other week from Friday evening to Wednesday morning. The court entered a written order of its judgment on July 31, 2019.

In the trial court's written order of judgment, the court restated that Mother was granted a divorce based on Father's physical assault towards Mother. In determining a permanent parenting schedule that would be in the best interest of Child, the trial court analyzed the relevant factors listed in Tennessee Code Annotated section 36-6-106(a). Specifically, the court found that Child has a good relationship with both Mother and Father, that Child is thriving under the temporary schedule, and that the temporary schedule allowed for Child to spend quality time with each parent. Additionally, the court noted that Father's assault on Mother raised concerns and that Mother had been the primary caregiver for Child. After considering the relevant statutory factors, the court determined that it was in the best interest of Child for Mother to remain as the primary residential parent and for the temporary parenting schedule to continue. As a result, the court allotted Father parenting time every other week from Friday at 6:00 p.m. to Wednesday morning. The court further stated that Parents would alternate holidays, would share spring and fall breaks equally, and would each be allotted two nonconsecutive weeks during the summer. The trial court incorporated a permanent parenting plan into its final order that detailed the parenting schedule.[3]

Father timely appealed the trial court's ruling.

## II.    ISSUES PRESENTED

Father raises two issues on appeal, which we have copied verbatim:

---

[3] The trial court's written ruling also determined issues that are not relevant to this appeal, such as spousal support and marital debts.

I.     Whether the trial court erred when it designated Mother as primary residential parent.

II.    Whether the trial court erred when it failed to maximize Father's parenting time.

For the reasons stated herein, we affirm the trial court's decision to designate Mother as the primary residential parent and its determination of the parenting schedule.

### III.    DISCUSSION

Although Father lists two separate issues for review, because both issues hinge on a review of the trial court's custody determination, we shall examine them as a single issue.

In cases that are tried by a "court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court." *Rountree v. Rountree*, 369 S.W.3d 122, 128-29 (Tenn. Ct. App. 2012) (citing Tenn. R. App. P. 13(d)).  We review questions of law *de novo*, attaching no presumption of correctness to the trial court's legal conclusions.  *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002)).

When an appellate court "review[s] a trial court's factual determinations in matters involving child custody and parenting plan developments," the Tennessee Supreme Court has emphasized that we shall employ a "*limited* scope of review."  *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017).  Meaning, a trial court's factual findings on custody issues are presumed correct and are afforded great deference on appeal.  *Id.* at 495, 500.  Stated differently, "[t]rial courts are vested with wide discretion in matters of child custody" and "appellate courts will not interfere except upon a showing of erroneous exercise of that discretion."  *Rountree*, 369 S.W.3d at 129 (alteration in original) (quoting *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)).  Custody issues "often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings;" therefore, "appellate courts 'are reluctant to second-guess a trial court's decisions.'"  *Id.* (omission in original).  In child custody cases, a trial court abuses its discretion when its decision "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record."  *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

When fashioning a permanent parenting plan, trial courts are required to "consider the factors listed in Tennessee Code Annotated section 36-6-106(a)(1)-(15) to ascertain the best interest of the child, in determining a residential schedule and naming a primary residential parent."  *Sullivan v. Sullivan*, No. M2018-01776-COA-R3-CV, 2019 WL

4899760, at *4 (Tenn. Ct. App. Oct. 4, 2019) (citing Tenn. Code Ann. §§ 36-6-106(a) and -404(b)); *see also McClain v. McClain*, 539 S.W.3d 170, 187 (Tenn. Ct. App. 2017). "The paramount concern in establishing a permanent parenting plan is the best interest of the children." *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013). Effective June 6, 2011, the General Assembly amended section 36-6-106 by adding language that seeks "to give each parent the *maximum amount* of time possible with the child." *Rountree*, 369 S.W.3d at 129.

> The current version of section 36-6-106(a) states, in part:
>
> In a suit for annulment, divorce, . . . or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy *the maximum participation possible* in the life of the child consistent with the factors set out in this subsection (a).

Tenn. Code Ann. § 36-6-106(a) (emphasis added). The best interest factors listed in section 36-6-106(a) are as follows:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . .;
>
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
>
> (4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
>
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
>
> (6) The love, affection, and emotional ties existing between each parent and the child;

- 6 -

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

*Id.* While a court must consider each factor listed in section 36-6-106(a), "the absence of an explicit discussion of each factor does not mean that they were not considered." *Grissom v. Grissom*, 586 S.W.3d 387, 399 (Tenn. Ct. App. 2019).

In the present case, the trial court designated Mother as the primary residential parent. In doing so, the court stated the parenting schedule that the parties were operating under should remain as the permanent schedule. The parenting schedule that was adopted under the permanent parenting plan entitled Father to parenting time every other week from Friday evenings to Wednesday mornings.[4] The plan granted Father a total of 156 days per year.

---

[4] Again, the permanent parenting plan adopted by the trial court also entitled Father to alternating holidays, equal time on spring and fall breaks, and two nonconsecutive weeks during the summer.

In response to the trial court's ruling, Father claims that the court abused its discretion by failing to properly apply the best interest factors. Father does not dispute that the trial court applied the factors listed in section 36-6-106(a). Instead, Father claims that the court failed to consider the factors listed in section 36-6-404. Father cites *Maupin v. Maupin*, 420 S.W.3d 761, for this claim. To his detriment, Father's reliance on *Maupin* is erroneous.

Prior to 2014, courts were instructed to consider the factors stated in section 36-6-404(b) when fashioning a permanent parenting plan. *See Rountree*, 369 S.W.3d at 129-30 (applying a former version of section 36-6-404(b)). However, "in 2014, the General Assembly amended Tennessee Code Annotated § 36-6-404(b) to replace its list of factors with a reference to the revised list of factors contained in Tennessee Code Annotated § 36-6-106(a)." *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). In *Maupin*, the court applied the former version of section 36-6-404(b) that listed specific best interest factors rather than referencing the factors listed in section 36-6-106(b). *See Maupin*, 420 S.W.3d at 770. Currently, courts are instructed to consider the factors listed in section 36-6-106(b) in accordance with the requirements for permanent parenting plans that are stated in 36-6-404(b). *See McClain*, 539 S.W.3d at 187; *Sullivan v. Sullivan*, No. M2018-01776-COA-R3-CV, 2019 WL 4899760, at *4 (Tenn. Ct. App. Oct. 4, 2019) (citing Tenn. Code Ann. §§ 36-6-106(a) and -404(b)). After reviewing the trial court's written order, we conclude that the court applied the correct standard in designating Mother as the primary residential parent and fashioning the permanent parenting schedule. It properly considered and applied the factors listed in Tennessee Code Annotated section 36-6-106(a).

In the trial court's written order granting Mother an absolute divorce, in determining the parenting schedule, it explicitly stated that it relied on the factors listed in section 36-6-106(a). The court found that several factors, such as factors (1), (2), (4), and (6) applied equally to Parents. However, the court took issue with Father's assault towards Mother and his "controlling nature" under factors (8) and (11). Additionally, the court noted that under factor (5), although Parents' marriage was of short duration, Mother had been the primary caregiver for Child. Further, under factor (10), the court stated that Child was benefiting from the temporary residential schedule and that the schedule allowed her to spend quality time with Mother and Father.[5]

The trial court's factual determinations on the factors listed in section 36-6-106(b) are presumed correct. *C.W.H.*, 538 S.W.3d at 495 (quoting *Armbrister*, 414 S.W.3d at 692); *Rountree*, 369 S.W.3d at 128-29 (citing Tenn. R. App. P. 13(d)). From our review, its findings were supported by the evidence presented. Accordingly, we decline to modify the court's decision in order to fashion a result that favors Father. The trial court did not

---

[5] In its oral ruling, the court also noted that there was no evidence relating to factor (12) and that factor (13) did not apply because Child is under twelve years of age.

abuse its discretion by designating Mother as the primary residential parent. Further, we find no fault in the court's decision to set forth a parenting schedule that granted Father less than equal parenting time.

Father is correct in stating that section 36-6-106(a) now directs courts to fashion custody arrangements that permit the "maximum participation possible" for each parent. *See* Tenn. Code Ann. § 36-6-106(a); *Rountree*, 369 S.W.3d at 129. However, as noted in *Rountree*, the court's ultimate determination must be guided by the best interest of the child. *Rountree*, 369 S.W.3d at 129, 133. Stated differently, "the best interest of the child, not the 'maximum participation possible' concept, remains the primary consideration under the governing statutory scheme." *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019). "Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life o*nly to the extent that doing so is consistent with the child's best interests*." *Id.* (emphasis added) (quoting *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016)).

We note that although several factors weighed in favor of both Mother and Father, "child custody litigation is not a sport that can be determined by simply tallying up wins and losses." *Grissom*, 586 S.W.3d at 395 (quoting *Paschedag v. Paschedag*, No. M2016-00864-COA-R3-CV, 2017 WL 2365014, at *4 (Tenn. Ct. App. May 31, 2017)). Custody determinations and ascertaining the best interest of a child require more than a "mechanical tallying of the section 36-6-106(a) factors." *Id.*

Considering Father's assault of Mother in the presence of Child, we cannot say the trial court failed to "maximize" Father's parenting time by ordering a schedule that permitted him 156 days per year with Child. Although several factors weighed equally in favor of Mother and Father, the trial court properly applied section 36-6-106(a) in determining the permanent parenting schedule. The parties agreed that Child was happy and thriving under the current parenting schedule. Therefore, we affirm the trial court's decision to name Mother as the primary residential parent and to grant Father that parenting time afforded to him pursuant to the terms of the permanent parenting plan.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the trial court is affirmed and the case remanded for further proceedings as may be necessary. Costs of this appeal are taxed to the appellant, Stephen Edwin Powers, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE