FILED
09/20/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2018 Session

## COURTNEY P. BRUNETZ v. NEIL A. BRUNETZ

**Appeal from the Circuit Court for Hamilton County**
**No. 13D1347     Don R. Ash, Senior Judge**

_____

### No. E2017-01391-COA-R3-CV

_____

In this post-divorce action involving the father's petition to modify the parties' existing permanent parenting plan and the mother's subsequent counter-petition, the trial court increased the father's co-parenting time by ten days during the summer, for a total of 130 parenting days per year, and granted the mother sole decision-making authority with respect to the children's education and extracurricular activities. The father has appealed. Discerning no reversible error, we affirm the trial court's ruling in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Donald J. Aho, Chattanooga, Tennessee, for the appellant, Neil A. Brunetz.

John R. Morgan, Chattanooga, Tennessee, for the appellee, Courtney P. Brunetz.

### OPINION

### I. Factual and Procedural Background

Courtney P. Brunetz ("Mother") and Neil A. Brunetz ("Father") were divorced by final decree of the Hamilton County Circuit Court ("trial court"), entered October 22, 2013. The parties had two minor children born during the marriage: I.B., who was nine years of age at the time of entry of the final decree, and M.B., who was five years of age (collectively, "the Children"). At the time of the divorce, Mother and Father executed a Marital Dissolution Agreement ("MDA") and a Permanent Parenting Plan ("PPP").

Pursuant to the PPP, Mother was designated primary residential parent and enjoyed 245 days of co-parenting time per year. Father enjoyed the remaining 120 days per year with the Children. All major decisions required joint agreement of the parents, and mediation was the anticipated means of resolution to any impasse.

Regarding the choice of schools for the Children, the PPP outlined the following in relevant part:

> It is contemplated at this time that the children will attend Baylor, McCallie or GPS; however, as otherwise set forth in this plan, the parties will together make these decisions at the appropriate time and with both parties reserving the right to engage mediation or court intervention regarding any disagreement, circumstance or related issues which may arise in the future. The parties shall divide the cost of private school tuition at St. Nicholas and whichever secondary private school the children attend through 12th grade, including McCallie, Baylor and/or GPS, and any other incidentals, pro rata according to the percentages derived from their prior year's income. The costs to be divided pro rata include tuition, books, supplies and fees. This obligation will begin in conjunction with the 2014-2015 school year.

On May 25, 2016, Father filed a petition in the trial court, seeking to modify the existing PPP due to an alleged material change in circumstance. Father, a practicing attorney, stated in his petition that by reason of the length of time he had been employed at his law firm, his work schedule had recently become more flexible such that he would be able to exercise more co-parenting time with the Children. Father also stated that the "methods and behavior of the Mother" had begun to negatively affect the Children. According to Father, Mother often disparaged him in the presence of the Children, interfered with his co-parenting time, failed to encourage the Children's relationship with him, and threatened to withhold his co-parenting time unless he paid expenses that were not his obligation. Father requested that Mother be ordered to submit to a mental health evaluation by a third-party professional, and he further sought a change in the parenting plan to "maximize available co-parenting time between minor children and both of their parents" pursuant to Tennessee Code Annotated § 36-6-106. Father attached a new proposed parenting plan to his petition, which suggested an allocation of parenting time of 182.5 days annually for each parent.

Father concomitantly filed a separate motion seeking a court-ordered psychological examination or parental fitness assessment for Mother pursuant to Tennessee Rule of Civil Procedure 35.01. On June 10, 2016, the judges of the Eleventh Judicial District entered an order recusing themselves from this matter.

2

On July 15, 2016, Mother filed an answer and counter-petition, denying the allegations of Father's petition and alleging, *inter alia*, that the Children were intimidated by Father's "abusive, controlling, [and] domineering personality in the presence of his new live-in girlfriend." Mother asserted that the only substantial and material change in circumstance was Father's behavior, which she characterized as "belligerent," "demanding," and "threatening." Mother also alleged that Father had been placing undue stress on the Children by insisting on communicating with Mother through the Children. Mother claimed that Father's proposed modifications to the parenting plan were "designed for him to exert greater control over the children and the Mother" and were "further motivated by his effort to minimize his financial obligations on behalf of his children." Mother submitted a counter-proposal for an amended PPP that added a provision stating, "Father shall exercise no overnight visitation with the parties' minor children while having overnight guests of the opposite sex, unless such person is married to the Father."[1] Mother also sought to increase Father's monthly child support payments based on a purported increase in Father's gross monthly income.

On August 8, 2016, then Chief Justice Sharon G. Lee of the Tennessee Supreme Court assigned Senior Judge Don R. Ash to preside over this matter. Subsequently, on September 30, 2016, Judge Ash entered a scheduling order, which provided, *inter alia*, for a parental fitness assessment and evaluation to be performed with regard to each parent. On October 10, 2016, the trial court appointed Dr. Thomas Biller to perform such assessment and evaluation of the parents.

On March 9, 2017, Father filed an answer to Mother's counter-petition, denying all substantive allegations and raising several affirmative defenses. In his answer, Father noted in particular that the PPP contained "no restriction against either party moving on with the social component of their respective lives."

On April 4, 2017, the trial court conducted a bench trial upon the petition and counter-petition for modification, hearing testimony solely from the parties. The trial court also considered the deposition testimony and reports of Dr. Biller. In its subsequent order entered June 11, 2017, the trial court determined that there had been a material change in circumstance affecting the best interest of the Children and modified the existing PPP. The court's modifications to the PPP included (1) an increase in Father's co-parenting time by the court's award of ten additional days annually with the Children during the summer and (2) designation of Mother as sole decision-maker with respect to educational decisions and extracurricular activities. In support of its decision to modify the decision-making authority of the parties, the trial court explained in its memorandum opinion:

---

[1] Mother withdrew her request for restricted overnight visitation by the time of trial.

It seems to me this major decision-making is not working. Sorry about that, but it's not. Y'all continue to fuss over that. And this private school thing, which is provided for in the child support issue, that's what it says. So, ma'am, in regard to educational decisions, I'm going to let you be the decider on that. I'm going to take that out of the joint box. . . . Then I'm also going to modify it where the mom is the decision maker in regard to extracurricular activities.

The trial court also suggested that the parents "find a counselor to help with communication skills and parenting" and modified the PPP to forbid "communication via either parent sending messages through the children." Father timely appealed.

## II. Issues Presented

Father presents three issues for our review, which we have restated slightly:

1.  Whether the trial court abused its discretion by increasing Father's parenting time by only ten days annually instead of dividing co-parenting time equally between the parties.

2.  Whether the trial court's division of tuition payments for private schools of Mother's choosing constituted an upward deviation in Father's child support obligation.

3.  Whether the trial court abused its discretion by *sua sponte* granting Mother the sole decision-making authority with respect to education and extracurricular activities.

## III. Standard of Review

With regard to the proper standard of review in a case involving modification of a co-parenting schedule, our Supreme Court has elucidated:

> In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory

4

interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

* * *

Once a permanent parenting plan has been incorporated in a final divorce decree, the parties are required to comply with it unless and until it

is modified as permitted by law. *See* Tenn. Code Ann. § 36-6-405 (2010). In assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstances has occurred and then apply the "best interest" factors of section 36-6-106(a). *Id*. § 36-6-101(a)(2)(B)-(C) (2010), -106(a) (2010 & Supp. 2013); *see also Kendrick*, 90 S.W.3d at 570; *Boyer* [*v. Heimermann*], 238 S.W.3d [249,] 255 [(Tenn. Ct. App. 2007)]. Finally, pursuant to the modification procedures described in section 36-6-405(a), the court must apply the fifteen factors of section 36-6-404(b), so as to determine how, if at all, to modify the residential parenting schedule. Just as the court's processes for determining the child's best interests and residential schedule when making its initial custody decisions overlap substantially, here again the two analyses are likely to be quite similar. *Compare* Tenn. Code Ann. § 36-6-106(a), with Tenn. Code Ann. § 36-6-404(b).

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93, 698-99 (Tenn. 2013). Subsequently, in 2014, the General Assembly amended Tennessee Code Annotated § 36-6-404(b) to replace its list of factors with a reference to the revised list of factors contained in Tennessee Code Annotated § 36-6-106(a). *See* 2014 Tenn. Pub. Acts, Ch. 617 (S.B. 1488). Therefore, following such amendment, once the trial court determines that a material change of circumstance has occurred, the court should "proceed[] to determine whether modification of the schedules is in the best interest of the child[ren], utilizing the factors at § 36-6-106(a)." *See Allen v. Allen*, No. W2016-01078-COA-R3-CV, 2017 WL 908319, at *8 (Tenn. Ct. App. Mar. 7, 2017) (quoting *Wheeler v. Wheeler*, No. M2015-00377-COA-R3-CV, 2016 WL 3095695, at *3 (Tenn. Ct. App. May 24, 2016)).

## IV. Division of Co-Parenting Time

Father contends on appeal that the trial court's decision to modify the PPP to grant him only an additional ten days of co-parenting time, for a total of 130 days per year, failed to maximize his time with the Children. Father bases his argument on our Supreme Court's recognition that the "statutory goal . . . is to allow both parents to enjoy the 'maximum participation possible' in the lives of their children." *See Armbrister*, 414 S.W.3d at 707; *see also* Tenn. Code Ann. § 36-6-106(a) (2014).

Father acknowledges that the trial court properly determined that a material change in circumstance had occurred since entry of the previous PPP. *See Allen*, 2017 WL 908319, at *8. Father argues, however, that the trial court did not properly consider the factors listed in Tennessee Code Annotated § 36-6-106(a) because, *inter alia*, (1) the court did not accord the proper weight relative to the court-ordered evaluation suggesting

6

shared parenting time and (2) the court improperly considered Father's live-in girlfriend as a negative factor.

Tennessee Code Annotated § 36-6-106(a) provides the following concerning modification of a parenting plan:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child . . . ;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)  The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)  Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)  Any other factors deemed relevant by the court.

Our review of the trial court's memorandum opinion reveals that the trial court explicitly considered each and every factor contained in Tennessee Code Annotated § 36-6-106(a), making specific findings with regard to each factor. Having determined that a material change in circumstance had occurred, the court stated:

And then the next thing I do is I look at the factors and that's TCA 36-6-106. Stability and strength of a child's relationship with each parent including one parent performing the majority of the parenting responsibilities. It's obvious for me listening to this case that the mother has done that.

Next, each parent's ability to facilitate a positive relationship with each other. I don't think either one of y'all do that. I think, ma'am, I think occasionally you've become the advocate or the hero for the child and that's not good when the enemy is the dad. And, sir, I think sometimes you don't facilitate it either based upon some of the choices that you've made.

Number three is not applicable. Number four, disposition of each party to provide the child with food, clothing, etc. I think you both do a wonderful job at that. Next, the primary caregiver, that's the mother. Love and affection for the children, I think both of you love the children. Emotional needs of the child, at first I circled both because I read the good doctor's report. To be quite honest, I think you both fall short in that. I think when we play the children to make the dad look bad, that's not serving their emotional needs. And, sir, when you make choices that is in your best interest instead of the children's, you're not looking out for their emotional needs.

The moral, physical and emotional fitness of each parent, I think you both are, like I said, nice people. I just think you've gone down this path of war or making the other one feel bad or making you feel better and I think that's harmful.

The children's interaction or relationship with siblings and family and child's involvement in significant activities, I think the mother primarily has done that. Length of time the children have been in a stable environment, I think that's the mother as well. The parents' employment schedule. While the father's schedule is better, I think the mother's schedule is better than his. And then finally any other factors. So I really don't find any additional factors.

Based on our thorough review of the evidence presented at trial, we determine that the proof supports the trial court's findings with regard to the applicable factors. The evidence demonstrated that Mother had provided a more stable home for the Children, performing a majority of parenting responsibilities with regard to the Children's daily needs. Although both parents performed most parenting responsibilities well, neither had demonstrated a wholehearted willingness to facilitate and encourage the relationship between the Children and the other parent. Both parents amply provided for the Children's physical and educational needs, although historically Mother had been the primary caregiver.

The evidence at trial further demonstrated that both parents maintained a loving and nurturing bond with the Children, although, as the trial court found, neither parent had necessarily placed the Children's emotional needs before his or her own. Both parents were fit custodians, and there was no evidence of any type of abuse or neglect. The proof demonstrated that the Children had thrived in school, extracurricular activities, and relationships while Mother was the primary residential parent, and the court properly considered the importance of continuity for the Children. The court also properly considered that Mother's work schedule, which allowed her to work from home a great deal of the time, was much more flexible than Father's, although his flexibility had improved in recent years. Overall, the evidence supported the trial court's decision to generally continue the previous co-parenting schedule with an award of additional days annually to Father in the summer.

The trial court specifically noted that Dr. Biller's testimony and reports had been taken into consideration in its decision. However, Father argues that the court did not place enough emphasis on Dr. Biller's recommendations. Although Dr. Biller did opine that a more equal co-parenting schedule might be beneficial to decrease "arguing about who had more one way or the other" and to increase the Children's access to both

parents, Dr. Biller also acknowledged that he had no concerns about placement of the Children primarily with either parent. As Mother points out in her appellate brief, Dr. Biller's opinion was not binding upon the trial court and did not address every factor that the court was required to consider. *See Sweeney v. Sweeney*, No. 02A01-9212-CV-00335, 1993 WL 157668, at *5 (Tenn. Ct. App. May 14, 1993) ("While Mr. Sweeney may take issue with the court's failure to accept [the expert's] recommendation [with regard to custody], the court was not bound by this one piece of evidence . . . ."); *see also Forrest Constr. Co., LLC v. Laughlin,* 337 S.W.3d 211, 233 (Tenn. Ct. App. 2009) ("The trial judge, as the trier of fact, is not compelled to unequivocally accept expert opinions.").

Furthermore, with regard to Father's argument that the trial court placed undue emphasis on Father's living situation with his girlfriend, our review of the court's memorandum opinion does not reveal that any improper weight was afforded. In fact, in its consideration of the above factors, the only reference that the trial court made to Father's residential environment was regarding factor number seven, concerning the Children's emotional needs. The court stated, referring to Father, "when you make choices that is in your best interest instead of the children's, you're not looking out for their emotional needs." However, the court also stated, referring to Mother, "when we play the children to make the dad look bad, that's not serving their emotional needs." The court ultimately concluded that both parents "fell short" in their efforts to serve the emotional needs of the Children. Therefore, the trial court's analysis of this factor did not favor one parent over the other.

In conclusion, we determine that the trial court's decision regarding the co-parenting schedule was not an abuse of discretion. The trial court's ruling did not "appl[y] an incorrect legal standard, reach[] an illogical result, resolve[] the case on a clearly erroneous assessment of the evidence, or rel[y] on reasoning that cause[d] an injustice." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). Furthermore, "[i]t is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn. 2001). We therefore affirm the trial court's co-parenting residential schedule in this matter.

V. Modification of Decision-Making Authority

Father's remaining issues relate to the trial court's determination that Mother should have sole decision-making authority concerning the Children's education and extracurricular activities. Father contends that the trial court's decision to grant Mother sole decision-making ability was "not raised by any party below, and neither party briefed it or argued it before the trial court." Father further asserts that "the trial court did

not make any factual findings explaining the rationale for its unfounded decision to change the Parenting Plan." In contrast, Mother argues that the trial court properly modified the allocation of decision-making authority in the PPP because "to leave these two parties to jointly make the decisions with regard to the Children's private school education and extracurricular activities would only result in more discord." Mother thereby asserts that the court "made the appropriate modification in the best interest of the children." We agree with Mother.

We note at the outset that Father's petition seeking modification of the PPP averred that "a substantial and material change of circumstances exists which vests the Court with jurisdiction and requires implementation of a new [PPP] better catered to the best interests of these minor children." Father thus sought a "modification of the [PPP] governing the rights and obligations of the parties with regard to these minor children." Pursuant to Tennessee Code Annotated § 36-6-404(a)(2), as part of its modification of the parties' PPP, the trial court had the ability, authority, and the legislative directive, to "[e]stablish the authority and responsibilities of each parent with respect to the child[ren], consistent with the criteria in this part." Tennessee Code Annotated § 36-6-404(a)(3) further directs the trial court to "[m]inimize the child[ren]'s exposure to harmful parental conflict."

During trial, both parties presented a considerable amount of testimony regarding their inability to cooperate when making major decisions, especially decisions concerning the Children's school enrollment and extracurricular activities. The parties also acknowledged that their conflict with respect to these subjects detrimentally affected the Children. Therefore, we conclude that the trial court had the authority and sufficient justification to modify the decision-making authority of the parents in the modified PPP.

A modification in decision-making authority is analyzed utilizing the same standards governing any modification of the parenting plan. *See Gider v. Hubbell*, No. M2016-00032-COA-R3-JV, 2017 WL 1178260, at *5 (Tenn. Ct. App. Mar. 29, 2017) (citing *Colley v. Colley*, No. M2014-02495-COA-R3-CV, 2016 WL 3633376, at *10 (Tenn. Ct. App. June 28, 2016), *perm. app. denied* (Tenn. Nov. 17, 2016) (analyzing a parent's request for sole decision-making authority under the material change analysis)). Therefore, once the existence of a material change in circumstance has been found, the trial court should consider the factors listed in Tennessee Code Annotated § 36-6-106(a) to determine whether a modification is in the children's best interest. *See Allen*, 2017 WL 908319, at *8. As the trial court determined, the prior allocation of joint decision-making authority with regard to education and extracurricular activities was simply "not working." The parties acknowledged numerous disputes regarding the Children's school enrollment and extracurricular activities.

As previously explained, the best interest factors enumerated in Tennessee Code Annotated § 36-6-106(a) weighed in Mother's favor with regard to stability and continuity in school and at home, as well as encouragement of the Children's involvement in activities and their interpersonal relationships with relatives and peers. Therefore, we again determine that the trial court's determination to afford Mother sole decision-making authority regarding education and extracurricular activities did not "appl[y] an incorrect legal standard, reach[] an illogical result, resolve[] the case on a clearly erroneous assessment of the evidence, or rel[y] on reasoning that cause[d] an injustice." *See Gonsewski*, 350 S.W.3d at 105. We accordingly affirm the trial court's allocation of decision-making authority in the modified PPP.

Finally, Father contends that the original PPP did not contemplate the Children's enrollment in private schools as a permanent arrangement, instead reserving educational decisions to be made jointly "at the appropriate time." Father thus interprets the original PPP provision to mean that he should not be liable for tuition costs when the parties did not jointly agree on the private school. Accordingly, Father contends that the trial court's requirement that he pay tuition costs pro rata for a school unilaterally chosen by Mother would be an "erroneous finding of an upward deviation of child support." We determine Father's argument in this regard to be unavailing.

The parties' original PPP provided the following concerning school enrollment:

It is contemplated at this time that the children will attend Baylor, McCallie or GPS; however, as otherwise set forth in this plan, the parties will together make these decisions at the appropriate time and with both parties reserving the right to engage mediation or court intervention regarding any disagreement, circumstance or related issues which may arise in the future. The parties shall divide the cost of private school tuition at St. Nicholas and whichever secondary private school the children attend through 12th grade, including McCallie, Baylor and/or GPS, and any other incidentals, pro rata according to the percentages derived from their prior year's income. The costs to be divided pro rata include tuition, books, supplies and fees. This obligation will begin in conjunction with the 2014-2015 school year.

(Emphasis added.)

The modified PPP entered by the trial court on June 19, 2017, provides for a decrease in the amount of Father's monthly child support obligation and further states:

[T]he parties shall divide the cost of private school tuition at St. Nicholas and McCallie, as well as whichever secondary private school the Mother

13

chooses for the parties' daughter . . . to attend, including Baylor or Girls Preparatory School, through the 12th grade, and any other incidental [costs], pro rata according to the percentages derived from their prior year's income. The costs to be divided pro rata include tuition, books, supplies and fees.

Ergo, the provision regarding private school tuition contained in the modified PPP is not materially different from the provision contained in the original PPP. Father's position appears to be that if Mother unilaterally chooses to enroll the Children in a more costly private school at some point in the future, his obligation could increase. However, this Court cannot "render an opinion in an appeal which is dependent upon future events or involves a purely hypothetical or theoretical set of facts." *See, e.g., Hurd v. Flores*, 221 S.W.3d 14, 30 (Tenn. Ct. App. 2006).

We further note that the parties' MDA, entered at the time of the divorce, provided that Father's child support obligation "includes an upward deviation associated with the children's private school tuition." Thus, Father's argument that the trial court's modified PPP somehow implemented an upward deviation that did not previously exist is unpersuasive. We further note that Father has never sought a modification of this provision in the MDA.

Father relies on this Court's opinion in *Pua-Vines v. Vines*, No. E2016-02472-COA-R3-CV, 2017 WL 3283415, at *4-7 (Tenn. Ct. App. May 23, 2017), in support of his argument regarding private school tuition cost. In *Pua-Vines*, the father and mother agreed at the time of their divorce that their children would attend a private Catholic school, and their parenting plan, which designated joint educational decision-making authority, provided that private school costs would be split equally between them. *Id.* at *6. Subsequently, the mother unilaterally decided to enroll the daughter in a different, non-Catholic private school. *Id.* This Court determined that "[b]ecause Father was foreclosed from participating in the decision to enroll the older child at [the non-Catholic school], we conclude that he should not be made to pay tuition above what was contemplated in the [original] parenting plan." *Id.* at *6. As a result, this Court ordered the father to pay "one-half of the annual [Catholic school] tuition going forward unless and until Mother and Father jointly agree to enroll the child in another school." *Id.*

In this case, Father objects to paying any tuition for a private school unilaterally chosen by Mother under the theory that they did not jointly agree to send the Children to a private school on a permanent basis. However, the parties' original PPP contemplated that the Children would attend private school and that the parties would divide the costs pro rata, which has apparently been accomplished to date. The modified PPP presents no material change in this provision. Furthermore, Father has not demonstrated any

14

unilateral educational decision by Mother that has resulted in his liability for increased costs, as was the case in *Pua-Vines*.  We therefore determine Father's reliance on this Court's opinion in *Pua-Vines* to be misplaced and conclude that the trial court's modification of educational decision-making authority did not constitute an upward deviation in Father's child support obligation.

## VI.  Attorney's Fees on Appeal

In the argument section of their appellate briefs, both parties have requested an award of attorney's fees incurred on appeal; however, this issue has not been properly raised in the statement of the issues in either principal brief.  As our Supreme Court has elucidated:

> Appellate review is generally limited to the issues that have been presented for review.  Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007).  Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof."  Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); *see also Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue.").  Therefore, both requests for attorney's fees on appeal are deemed waived.

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects.  We remand this case to the trial court for enforcement of the judgment and collection of costs assessed below.  Costs on appeal are assessed to the appellant, Neil A. Brunetz.

_____
THOMAS R. FRIERSON, II, JUDGE

15