IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2021 Session

**BRENT H. MOORE v. KAREN R. MOORE**

**Appeal from the Chancery Court for Lawrence County**
No. 14-16829      Stella L. Hargrove, Judge

——————————————————

**No. M2019-01065-COA-R3-CV**

——————————————————

Following their divorce, both parents sought modification of a permanent parenting plan. The parents agreed that there had been a material change in circumstances warranting a modification. But they disagreed over the parenting schedule and who should be the primary residential parent. Among other things, the trial court retained the father as the primary residential parent and gave him sole decision making over major decisions. And the court substantially reduced the mother's parenting time. Both parents also filed petitions for contempt against the other. In part, the father sought to hold the mother in contempt for failure to make certain payments as required by the divorce decree. Although the court dismissed all of the contempt petitions, it ordered the mother to pay the father for the missed payments anyway. We vacate the modified plan and remand for a determination of the minor child's best interest. Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part and Affirmed in Part and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Christina Hammond Zettersten, Brentwood, Tennessee, for the appellant, Karen R. Moore.

Teresa Brewer Campbell, Lawrenceburg, Tennessee, for the appellee, Brent H. Moore.

# OPINION

## I.

Karen R. Moore ("Mother") and Brent H. Moore ("Father") divorced in 2018, when their two younger daughters were fifteen and nearly eleven years old. The divorce decree ordered a sale of the marital residence. Under the decree, Mother was responsible for maintenance expenses and utilities on the residence pending its sale. She was also responsible for making payments on her vehicle. As part of the divorce, the trial court entered a permanent parenting plan, which ordered equal parenting time between the parents and joint decision making for major decisions.

A few months after the divorce, Father petitioned to modify the parenting plan. He claimed that Mother was essentially not exercising her parenting time and that she had moved in with another man in Indiana. According to Father, Mother was unable to provide a proper home environment for the children, whereas he maintained a stable relationship, stable employment, and suitable housing. Father requested that he be named primary residential parent. He also requested that Mother have parenting time for two nonconsecutive weeks during the children's summer vacation.

Mother filed a counter-petition. She agreed that the parenting plan should be modified because she moved to Indiana. But she claimed that she had still tried to exercise her parenting time in Tennessee. According to Mother, Father prevented her from exercising her time. He had "engaged in a pattern of behavior so as to alienate the . . . children from Mother." For example, Mother claimed, Father "spoke[] disparagingly of Mother" to the children and blocked her on their phones. Father also allegedly refused to co-parent with Mother. Mother requested that she be named the primary residential parent of the youngest daughter and that Father be named the primary residential parent of the other minor child. Mother proposed that they alternate weeks with each child during the children's summer vacation.

Soon after filing the petition to modify the parenting plan, Father filed a petition for civil and criminal contempt against Mother. As grounds, he reiterated that Mother failed to exercise her parenting time under the parenting plan. She "ha[d] not met her obligation to care for the children." Father also claimed that Mother had not met various obligations of the divorce decree. She allegedly did not refinance her car in her name, make car loan payments, or put the marital residence utilities in her name. Father swiftly filed a second civil and criminal contempt petition against Mother for her failure to pay maintenance expenses on the marital residence pending its sale.

Mother filed her own criminal contempt petition against Father. She claimed that Father refused to allow her to exercise her parenting time. According to Mother, on one

2

occasion, Father assaulted her when she tried to pick up the youngest daughter from school. Father allegedly rolled his car window up on Mother's arm multiple times. The incident resulted in a police report.

The trial court held a hearing on the parties' petitions to modify the parenting plan and for contempt. As for the parenting plan modification, the court found that there had been a material change in circumstances and that it was in the children's best interests to modify the plan. The court granted Father, who remained primary residential parent to both children, 311 days of parenting time and Mother 54 days. Mother's parenting time would be exercised on the third weekend of every month and could take place at her home in Indiana. The court also granted Mother one week in June and one week in July, but "the children's activities . . . t[ook] precedence over Mother's parenting time" during those two weeks. And Father maintained "absolute responsibility" for making decisions about extracurricular and school activities during those weeks. Although neither party requested it, the court also granted Father sole decision-making authority over major decisions regarding each child.

In fashioning the new parenting plan, the court reasoned that Mother had failed to exercise her parenting time as originally ordered. Instead of petitioning to modify the parenting plan first, she simply chose to move to Indiana and never return. Mother also shared her animosity toward Father with the children. She "bad-mouthed" Father when she was with them. The court ordered that Mother would be responsible for transporting the children to and from Indiana until she was no longer "bad-mouthing" Father—or even discussing the case at all. In the court's view, "Mother likes to play a victim although she likes to see herself as a Survivor."

The court dismissed both parties' contempt petitions. It found Mother's petition without merit. As for Father's petitions, the court found that Mother did not willfully disobey the court's orders. Still, the court required Mother to pay Father $1,813.11 for car and utility payments "that she did not pay as ordered by th[e] court."

## II.

On appeal, Mother argues that the trial court abused its discretion in modifying the parenting plan. Mother takes issue with the court's allocation of parenting time and the award of sole decision-making power to Father. She also takes issue with being responsible for all the children's transportation costs to and from Indiana. And Mother argues that the court did not find her in contempt of the court's divorce decree. So, she contends, the court could not order her to pay Father for the car and utility payments.

We review the trial court's factual findings de novo on the record with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the

3

trial court's conclusions of law de novo with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

A.

All final divorce decrees involving a minor child must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2021). Absent an agreement, once a permanent parenting plan is incorporated into a final divorce decree, the parties must comply with it unless it is modified by the court. *Id.* § 36-6-405(b) (2021). Tennessee courts apply a two-step analysis for requests for either a modification of the primary residential parent or the residential parenting schedule. *See, e.g.*, *In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification); *see also Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). The threshold issue is whether a material change in circumstances has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C) (2021). If a material change has occurred, the court must then determine whether modifying the parenting plan is in the child's best interest by examining the statutory best interest factors. *Armbrister*, 414 S.W.3d at 697-98; *see* Tenn. Code Ann. § 36-6-106(a) (2021).

Here, the parties agreed, and the trial court found, that there had been a material change in circumstances. But, as Mother argues, and Father acknowledges, the trial court failed to conduct a best interest analysis. *See* Tenn. Code Ann. § 36-6-404(b), -405(a). In a best interest analysis, the court "shall consider all relevant factors." *Id.* § 36-6-106(a); *see Burden v. Burden*, 250 S.W.3d 899, 910 (Tenn. Ct. App. 2007) (reasoning that the court "shall consider" best interest factors "if they are relevant"); *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003) (explaining that a trial court must "consider all of the listed factors which are applicable"). And it must discuss those relevant factors. *Dishman v. Dishman*, No. M2008-01194-COA-R3-CV, 2009 WL 1181341, at *3 (Tenn. Ct. App. May 1, 2009).

The court here arguably made some best interest findings for a plan making Father the primary residential parent. For example, the court found that Father had been caring for the children most of the time, while Mother failed to exercise her parenting time. Mother "like[d] to play a victim although she like[d] to see herself as a Survivor." And she harbored animosity toward Father that she shared with the children. But the court did not relate these findings to any best interest factors. Its order did not demonstrate a consideration of the relevant factors. *Cf. Broadrick v. Broadrick*, No. M2013-02628-COA-R3-CV, 2015 WL 1947186, at *6 (Tenn. Ct. App. Apr. 29, 2015) (holding that the trial court's findings that the child now had more opportunities for extracurricular activities and should remain with the mother to "avoid disruption" showed consideration of the relevant factors). Instead, the findings support consequences for Mother's prior conduct. For

4

example, transportation costs were taxed to Mother, not based on a best interest determination, but because Mother was discussing the case and "bad-mouthing" Father with the children. "Parenting plans should never be used to punish . . . parents for their human frailties or past mis-steps." *Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004).

Mother asks us to conduct our own best interest analysis and fashion a new parenting plan. When a trial court's factual findings are inadequate, we may "remand the case to the trial court with directions to issue sufficient findings and conclusions." *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Or we may conduct "a de novo review of the record to determine where the preponderance of the evidence lies." *Id.* Whether to conduct a de novo review depends on "the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made." *Solima v. Solima*, No. M2013-01074-COA-R3-CV, 2015 WL 1186251, at *4 (Tenn. Ct. App. Mar. 11, 2015); *see also State v. King*, 432 S.W.3d 316, 328 (Tenn. 2014) (considering the adequacy of the record, the fact-intensive nature of the inquiry, and the ability to request supplementation of the record).

Here, we decline to conduct a de novo review of the record to make our own best interest determination. Whether a parenting plan modification serves a child's best interests is a factual question. *Brunetz*, 573 S.W.3d at 178 (citing *Armbrister*, 414 S.W.3d at 692). "The inquiry is factually driven and requires the courts to carefully weigh numerous considerations." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996); *see Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (describing a child's best interests as a "fact-intensive issue"). Thus, "trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693). Although the trial court questioned Mother's credibility, it is unclear whether the court did so as to the entirety of her testimony. This record contains some facts helpful for a best interest determination. But it is inadequate for us to make our own determination.

The circumstances here also make a de novo review of the record to make our own best interest determination inappropriate. By the time this case was argued on appeal, one of the children had reached the age of majority. So any parenting plan will only have to address the needs of one child.

Due to the lack of a best interest analysis, we vacate the trial court's modification of the parenting plan and remand the case for a determination of the minor child's best interest. The modified parenting plan shall remain in place on a temporary basis until the court makes such a determination. At either party's request, the court will conduct a new evidentiary hearing to account for developments since the original hearing on modification of the parenting plan.

B.

As for Mother's second issue on appeal, we are not persuaded by her argument that she could not be ordered to pay Father for the payments she was required to make under the final decree of divorce. Although the court dismissed Father's contempt petition for those payments, a "final judgment shall grant the relief to which the party in whose favor it is rendered is entitled." TENN. R. CIV. P. 54.03. Mother concedes that she owes Father for the missed payments.

## III.

We vacate the trial court's modification of the parenting plan. The current modified parenting plan will remain in effect for the one minor child pending the entry of an order containing the necessary findings of fact and conclusions of law related to the child's best interest. We affirm the judgment against Mother for those payments she was required to pay under the divorce decree. The case is remanded for further proceedings in accordance with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE