IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 2022 Session

## JESSE CLAY KING v. BRITTANY BOURGEOIS JONES

**Appeal from the Chancery Court for Maury County**
**No. 13-631    Stella L. Hargrove, Judge**

_____

**No. M2020-01252-COA-R3-CV**
_____

Unwed parents filed competing petitions to modify a permanent parenting plan.  The parents agreed that there had been a material change in circumstances warranting a modification.  But they disagreed over the parenting schedule and who should be the primary residential parent.  After a hearing, the trial court changed the primary residential parent and, based on proof of domestic abuse, limited the mother's parenting time.  We conclude that neither decision was an abuse of discretion.  So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Dana C. McLendon III, Franklin, Tennessee, for the appellant, Brittany Bourgeois Jones.

Cory L. Ricci, Columbia, Tennessee, for the appellee, Jesse Clay King.

## OPINION

### I.

### A.

Brittany Bourgeois Jones ("Mother") is the mother of Ethan and Sophia King.  In 2013, the chancery court decreed that Jesse Clay King ("Father") was the children's legal father.  Two years later, the court adopted an agreed permanent parenting plan, which provided for equal parenting time.  At that time, both parents lived in Maury County,

Tennessee. Mother was named the primary residential parent for the children "so long as both parents reside in the same school zone."

In May 2016, Mother moved to Louisiana with her then-boyfriend, Edwin Jones. Father believed it was a temporary move. So he agreed that four-year-old Sophia could stay with Mother. That fall, Sophia enrolled in a Louisiana school. She visited Father during school vacations. Meanwhile, Ethan, age eight, lived with Father in Tennessee and visited Mother during his school breaks. In the summer of 2017, Mother married Mr. Jones. And she informed Father that she intended to stay in Louisiana with Sophia.

Father moved to modify custody. Alleging that split custody was not in the children's best interest, he asked the court to award custody of both children to him. He maintained that he was a more fit custodian for the children based on alleged instability in Mother's home. Mother responded with her own modification petition. She requested that the court make the temporary split custody arrangement permanent in a modified parenting plan.

In late August 2017, the court adopted the status quo parenting arrangement as a temporary plan pending a final hearing.[1] For the next four years, Ethan continued to reside primarily with Father, while Sophia lived with Mother.[2]

Before the final hearing, Father filed an amended and supplemental modification petition. In addition to Mother's move to Louisiana, he alleged multiple reasons that it was in the children's best interest to modify custody. Specifically, he alleged domestic violence and drug use in Mother's home, ongoing discord between Mother and Father's new wife, Annie King, and Mother's poor parenting decisions. Father proposed that the court name him primary residential parent and limit Mother to 80 days of residential parenting time.

For her part, Mother gave the court two options. She requested that the court make the temporary split custody arrangement permanent. But she also submitted a proposed plan that essentially mirrored Father's plan. In her alternative plan, she sought full custody of both children, with Father limited to 80 days of residential parenting time.

B.

The court heard proof from multiple witnesses. The court also met with the children, then aged 9 and 12, in chambers. Proof at trial revealed that much had changed in the

---

[1] The temporary plan was never memorialized in a written order.

[2] In February 2020, the court suspended Father's visitation based on Mother's allegations that his alcohol use endangered the children. But the court dissolved the ex parte order a month later.

2

children's lives since the entry of the original plan. In addition to Mother's move, both parents had married new partners, and the two children had acquired new half-siblings.

Mother lived in Louisiana with her husband, Mr. Jones, Sophia, and three sons under the age of five.[3] Mother was the primary caregiver for the children. Mr. Jones worked long hours as a pipe-fitter. At the time of trial, he was working on an extended project in another state.

Father and his wife, Annie Fay King, lived with Ethan and their newborn daughter in Tennessee. Both Father and Mrs. King worked full time outside the home. Father often relied on his family, particularly his mother and grandmother, for help in caring for the children.

Neither parent had a stellar track record. The court heard abundant evidence highlighting the parents' missteps. Social media posts reflected poorly on both parents. Many of Mother's negative posts were directed at Father's wife. She blamed Mrs. King for posting nude pictures of her on social media. Mother agreed that her relationship with Mrs. King was "toxic." Father admitted that he pled guilty to driving under the influence in 2019. And he acknowledged that his stepbrother was a registered sex offender. But Father denied Mother's suggestion that he allowed his stepbrother to have contact with the children.

Mother also maintained that Father delegated his parenting responsibilities to his family, specifically to his "marijuana-smoking" mother. It was undisputed that Father's mother and stepfather smoked marijuana. According to several witnesses, Father's mother used marijuana for health reasons. She regularly transported Ethan to and from school. And she was the school's primary contact for Ethan. Father explained that, until her retirement, his mother worked in close proximity to the school. And she never smoked marijuana in the children's presence.

Before trial, the court ordered drug screens for individuals in regular contact with the children. Father's mother and stepfather tested positive for marijuana. So the court limited them to supervised contact. Father submitted proof that his parents had recently tested negative for illegal substances. He assured the court that his parents were committed to staying clean.

Mother told the court that she was significantly more involved in the children's lives than Father. She was a full-time caregiver. She did not rely on family members to care for her children. She typically accompanied the children to the exchange point. At times, she

---

[3] Mother contended that Father was also the biological father of one of her other children. But Father was never declared the child's legal father.

went the extra mile and drove Sophia to Tennessee so that Sophia could spend time with Ethan. Father, on the other hand, had never been to Louisiana. And he rarely came to the exchanges, opting to send his mother or grandmother instead. Father explained that Mother had friends and family in Tennessee. He knew no one in Louisiana.

Father complained that Sophia often arrived at his home with lice. He blamed Mother's poor housekeeping. Mother denied responsibility, claiming that Sophia's lice came from an unsanitary hotel room.

Father also had grave concerns about Mother's husband, Mr. Jones. According to Father, he learned through Sophia that Mr. Jones had a drug problem and an explosive temper. Mr. Jones admitted that he had drug problems in the past. He pled guilty to possession of marijuana in 2016. And, in 2017, he overdosed, resulting in a mandatory inpatient hospital stay. According to Mr. Jones, he stopped using illegal drugs in 2017.

Mother admitted that her relationship with Mr. Jones had been rocky. On at least two occasions, arguments between the couple escalated into physical violence. The first episode occurred in August 2018. Mother fled to a neighbor's house to call the police. When the police arrived, she told them that Mr. Jones had grabbed her by the throat and thrown her against the wall repeatedly. Mr. Jones was arrested for domestic assault and child endangerment. He later pled guilty to the lesser charge of domestic assault. As a condition of probation, Mr. Jones completed a substance abuse assessment and a 24-week domestic violence program.

In November 2019, it happened again. This time, both Mother and Mr. Jones called the police. Mr. Jones claimed that Mother threatened him with a knife and he pushed her to get away. Mother denied being the aggressor. As she told it, Mr. Jones shoved her into the air conditioning vent, causing a visible dent. No arrests were made that night. Afterward, Mr. Jones completed a short anger management course. And Mother and Mr. Jones enrolled in both individual and marriage counseling.

At trial and in their depositions, Mother and Mr. Jones downplayed the two domestic violence episodes. But cross-examination revealed that they both omitted key details. Mr. Jones also admitted at trial that Mother never threatened him with a knife. He lied to the police that night to avoid more jail time.

Mother assured the court that the couple had resolved their problems. She credited counseling for their newfound peace. Yet Mr. Jones admitted that he had attended only a few counseling sessions because of the pandemic and his busy work schedule. And he had only recently sought treatment for suspected PTSD.

Father blamed Mother for Sophia's use of TikTok. He showed the court multiple videos recorded and posted by both Mother and Sophia. Mother agreed that the lyrics in

4

Sophia's videos were inappropriate for a child her age. Mother conceded that she "didn't pay close enough attention." Yet she denied responsibility. She maintained that Ethan introduced Sophia to the social media platform. And Sophia showed it to Mother.

Mother found TikTok humorous. She posted hundreds of videos to her public account. She also re-posted some of Sophia's videos. There was even a side-by-side duet between Mother and daughter. In retrospect, Mother admitted that she "probably shouldn't have done them." At the time, "she wasn't thinking about it." Still, she conceded that she did not want her children to watch her TikTok videos. After hearing "how bad" they sounded in court, Mother planned to delete her account. But she appeared unconcerned that Sophia had seen her videos. In her opinion, Sophia had the maturity to distinguish between the real mother and her behavior on the internet.

After hearing all of the proof, the court adopted Father's proposed parenting plan with additional provisions, many of which Mother had requested. The court named Father primary residential parent for both children and limited Mother to 80 days of residential parenting time. The parents had a duty to ensure that the children had no contact with sex offenders or persons using illegal drugs. The court directed Father to instruct his mother to submit to hair follicle drug screens every four months and file the results with the court. Both parents were prohibited from posting disparaging remarks about each other on social media. The parents were also required to ensure that their spouses complied with this provision. And Father was directed to facilitate continued counseling for Sophia.

## II.

Mother contends that the court abused its discretion in adopting Father's proposed parenting plan. A court abuses its discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Our review of discretionary decisions is limited to determining whether the trial court's decision had the necessary factual support, whether the court identified and applied the correct law, and whether the court's decision was "within the range of acceptable alternative dispositions." *Id.*

We review the trial court's factual findings de novo on the record with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We give great deference to findings based on witness credibility, and we will not overturn such findings absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). "[T]rial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693). We review the trial court's conclusions of law de novo

with no presumption of correctness. TENN. R. APP. P. 13(d); *Armbrister*, 414 S.W.3d at 692.

All final divorce decrees involving minor children must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2021). Absent an agreement, once a permanent parenting plan is incorporated into a final divorce decree, the parties must comply with it unless it is modified by the court. *Id.* § 36-6-405(b) (2021). Tennessee courts apply a two-step analysis for requests to modify a permanent parenting plan. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 496 (Tenn. 2017); *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). The threshold issue is whether a material change in circumstances has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C) (2021). If a material change has occurred, the court must then determine whether modifying the parenting plan is in the child's best interest by examining the statutory best interest factors. *Brunetz*, 573 S.W.3d at 179; Tenn. Code Ann. § 36-6-106(a) (2021).

Whether a material change of circumstances has occurred is a question of fact. *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C). Here, the parents agreed that a material change had occurred, and the evidence supports such a finding. Mother moved to Louisiana with Sophia. Then she married Mr. Jones, with whom she had an admittedly rocky relationship. There was domestic abuse in Mother's home. And Sophia's use of TikTok and repeated episodes of lice raised questions about Mother's parenting.

A.

In determining the children's best interest, the court considered the proof of any statutory limiting factors as well as the relevant statutory best interest factors. *See* Tenn. Code Ann. §§ 36-6-106(a), -406 (2017); *Wheeler v. Wheeler*, M2015-00377-COA-R3-CV, 2016 WL 3095695, at *3 (Tenn. Ct. App. May 24, 2016) (explaining that the court should use the statutory best interest factors and, "where applicable, § 36-6-406"). The court found that testimony from several witnesses was not credible, including Mother and Mr. Jones. Cross-examination revealed that Mother and Mr. Jones had lied about the nature of the domestic violence in Mother's home. The court also found Mother's testimony about the lice episodes and Sophia's involvement with TikTok "incredible." On appeal, we defer to those credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009).

Significantly, the court found that "there has been abuse and domestic violence" in Mother's home, and it "occurred at least one time when Sophia was in the home with Mother." The court believed that the violence was likely to continue. On this basis, the

6

court determined that Mother's parenting time should be limited. *See* Tenn. Code Ann. § 36-6-406(b).

Turning to the best interest factors, the court recognized that both parents had shortcomings. Father made multiple "bad and foolish decisions" over the years. He was not involved or interactive with the children. He delegated parental responsibilities to his mother, a known drug user. On the other hand, Mother chose to make inappropriate TikTok videos with Sophia and to allow Sophia to make similar videos. It was clear to the court from the video evidence that Sophia had been influenced by the content of Mother's videos. Sophia also contracted lice multiple times in Mother's care. Then there were the new stepparents. Father's wife instigated an ongoing conflict with Mother, which was not in the children's best interest. Mother's husband was convicted of domestic assault. And the court found that the abuse was likely to continue. The court also considered the relationship between Ethan and Sophia. The children needed each other. The court determined that continued split custody was not in their best interests. So, while both parents had flaws, the court ultimately determined that it was in the children's best interest to award custody to Father and to limit Mother to 80 days of residential parenting time.

B.

Mother suggests that the court erred in its application of the statutory limiting factors. *See* Tenn. Code Ann. § 36-6-406. We cannot agree. When the parents filed their modification petitions, Tenn. Code Ann. § 36-6-406(b) required the court to limit a parent's residential time if it determined, "based upon . . . reliable evidence, that the parent resides with a person who has engaged in physical . . . abuse . . . of the parent." *Id.* § 36-6-406(b). As the court found, Mr. Jones physically abused Mother on more than one occasion. During at least one episode, Sophia was present in the home. The court also found that the abuse was likely to continue. While Mother testified otherwise, the court did not credit that testimony. We discern no basis in this record to overturn that finding. *See In re Adoption of A.M.H.*, 215 S.W.3d at 809. Despite Mother's protests on appeal, the court's limitation on her residential parenting time was consistent with the statutory directive.

Mother complains that the court should have also limited Father's parenting time based on Tennessee Code Annotated § 36-6-406(d). That part of the statute allows the court to limit any provision of the parenting plan based on the existence of specified misconduct that has "an adverse effect on the child's best interest." Tenn. Code Ann. § 36-6-406(d). In her view, there was ample proof of several limiting factors, including

> (1) A parent's neglect or substantial nonperformance of parenting responsibilities;
> . . . .

7

(3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;

     . . . .

(7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or

(8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

*Id.* The court determined that Father's conduct did not warrant a limitation. Based on this record, we cannot say that the court erred in this decision.

C.

Mother also contends that the court erred in weighing the best interest factors. *See id.* § 36-6-106(a). In her view, the court's most "glaring mistake" was its failure to assign sufficient weight to continuity. *See id.* § 36-6-106(a)(10) (directing the court to consider the "importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment"). The court also undervalued her role as Sophia's primary caregiver and "substantially understated" Father's parenting failures. *See id.* § 36-6-106(a)(1), (2), (5). And the court wrongly prioritized Sophia's reunification with Ethan at the expense of Sophia's relationship with her younger siblings in Louisiana. *See id.* § 36-6-106(a)(9).

Continuity is important. But it "does not trump all other considerations." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). The benefit of continuity is greater stability for the child. *See Maxwell v. Woodard*, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *20 (Tenn. Ct. App, May 31, 2013) ("The purpose of the emphasis on continuity . . . is to provide children without an intact family with as much stability and security as possible."). And the court found a marked lack of stability in Mother's home. There were episodes of domestic violence. Sophia contracted lice multiple times. And Mother allowed Sophia to view and post inappropriate content on social media. So we cannot fault the court for not assigning more weight to Mother's role as primary caregiver.

In determining the children's best interest, the court was forced "to sift through a great deal of disparaging information about both parents." *See Howe v. Howe*, No. E2008-02580-COA-R3-CV, 2010 WL 323068, at *4 (Tenn. Ct. App. Jan. 28, 2010). The court did not ignore Father's missteps. To the contrary, it expressed grave concerns about his delegation of parenting responsibilities and his overall lack of involvement with the

8

children.  Even so, in the court's eyes, Father's parenting flaws "paled in comparison" to the instability evident in Mother's home.[4]

Mother also complains that the court prioritized reunification of the siblings without any proof that it would benefit the children.  But our courts "have consistently recognized the importance of raising siblings together in the same household whenever possible." *Ateca v. Ateca*, No. M2007-02843-COA-R3-CV, 2009 WL 1138129, at *5 (Tenn. Ct. App. Apr. 27, 2009); *see also Shofner v. Shofner*, 181 S.W.3d 703, 717 (Tenn. Ct. App. 2004) (noting that "there is a presumption against separating siblings").  There was abundant proof at trial that Ethan and Sophia like each other and enjoy their time together.  Given the shortcomings of these parents, a strong sibling bond may well provide the children with much needed stability.

We conclude that the court did not abuse its discretion in determining the children's best interest.  This is a "particularly fact-intensive process."  *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). These decisions "often hinge on subtle factors, including the parents' demeanor and credibility during the . . . proceedings." *Gaskill*, 936 S.W.2d at 631.  The court applied the correct law, the evidence does not preponderate against its factual findings, and its decision is within the range of acceptable alternative dispositions. *See Lee Med., Inc.*, 312 S.W.3d at 524.

## III.

The court did not abuse its discretion in adopting a modified parenting plan that awarded custody of both children to Father and limited Mother's residential parenting time based on the evidence of domestic abuse.  So we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[4] Nor do we agree that the court unfairly penalized Mother for Sophia's involvement with TikTok. Mother concedes that she was more actively involved in Sophia's use of TikTok than Father.  And Sophia's use of TikTok was just one of several issues cited by the court.

9