FILED
09/01/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 2022 Session

## HEATHER ANNE (COATS) EMCH v. EDWARD GLEN EMCH, III

**Appeal from the General Sessions Court for Wilson County**
**No. 2015-DC-100   A. Ensley Hagan, Jr., Judge**
_____

### No. M2021-00139-COA-R3-CV
_____

This appeal concerns a father's petition to modify the permanent parenting plan for his five-year-old daughter. The father filed his petition after the child's mother decided to move from Wilson County—where the father lived and the child attended preschool—to Williamson County, where the mother's fiancé lived. The mother was the primary residential parent and wanted the child to attend school in Williamson County, but the permanent parenting plan gave the parties joint authority over educational decisions, and the father wanted the child to attend school in Wilson County. In his petition, the father contended that the mother's move constituted a material change in circumstance, and he asked the court to name him as the primary residential parent, implement a 50/50 residential parenting schedule, and give him authority over where the child would attend school. After a three-day trial, the court ordered the parties to send the child to school in Williamson County. The court also found the mother's move was a material change in circumstance for the purpose of modifying the residential parenting schedule but not for the purpose of changing the primary residential parent or reallocating decision-making authority. The court concluded that a 50/50 residential schedule was in the child's best interests. This appeal followed. We affirm the trial court's judgment in all regards.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Amanda G. Crowell, Lebanon, Tennessee, for the appellant, Heather Coats Land.

Melanie R. Bean, Lebanon, Tennessee, and Donald N. Capparella and Kimberly Ann Macdonald, Nashville, Tennessee, for the appellee, Edward Glen Emch, III.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In 2014, Edward G. Emch III ("Father") and Heather A. (Coats) Emch ("Mother") moved to Wilson County, Tennessee. Shortly after that, Mother gave birth to the couple's first and only child, Arianna ("the Child"). One year later, the parties entered into a marital dissolution agreement ("the MDA") and an agreed permanent parenting plan ("the Parenting Plan"). The MDA and the Parenting Plan were incorporated into the parties' final divorce decree, which was entered in November 2015.

The Parenting Plan gave Mother and Father alternating weeks of residential time with the Child as well as midweek visitation. During Father's week, Mother had visitation from Wednesday morning to Thursday morning. During Mother's week, Father had two hours of visitation on Wednesday evening. During holidays such as Thanksgiving, Mother and Father had equal time with the Child. If either party would be unavailable for more than four hours during their scheduled visitation, the other parent would have the right of first refusal to care for the Child.

The Parenting Plan named Mother as the primary residential parent, but it gave Father joint authority for all major decisions in the Child's life, including decisions related to her education. The plan provided that no changes could be made "to the minor child's daycare or schooling without both parties['] consent and agreement." If the parties could not agree, the Parenting Plan required them to attend mediation before returning to the court.

Mother and Father successfully navigated their co-parenting arrangement for the first few years after the divorce. They agreed to send the Child to daycare in Wilson County, where both Mother and Father lived, and they informally agreed to modify midweek visitation from Wednesday to Thursday. Although the parties sometimes had differences of opinion, they communicated about the Child often and relied on each other when last-minute scheduling changes were necessary. Mother and Father also accommodated each other's plans for vacations and the occasional business trip.

In November 2019, however, Mother and Father reached an impasse over where the Child would start kindergarten. By that time, the Child was five and in her last year of preschool. Mother planned to move to Williamson County with her fiancé and wanted the Child to attend school there.[1] Father had recently built a new house with his wife in Wilson

---

[1] Because Mother's new residence was less than 50 miles from Father's, her move did not trigger the parent relocation statute, Tennessee Code Annotated § 36-6-108.

County and wanted the Child to attend school there. The parties attended mediation but failed to reach an agreement.

In December 2019, Father returned to court and filed a petition to modify the Parenting Plan. Father contended that Mother's relocation was a material change in circumstance, and he asked the court to name him as the primary residential parent and use his address to determine where the Child would go to school. Father also proposed a residential parenting schedule that eliminated the parties' midweek visitation and allowed for an entire week of parenting time during the Child's Thanksgiving break on alternating years. Under the proposed plan, each parent would have 182.5 days of residential time.

In her answer, Mother contended that the Child had to attend the school zoned for her residence—Trinity Elementary School—because she was the primary residential parent. Mother argued that the Parenting Plan's joint-decision-making provision did not apply because enrolling the Child at Trinity would not be a "change in daycare or schooling" or an "educational decision." Mother also denied that her relocation justified a change to the primary residential parent, but she stated that she was open to modifying the residential schedule to reduce the Child's commute time. Both Mother and Father requested an award of their attorney's fees under Tennessee Code Annotated § 36-5-103(c).

The trial court heard the matter over four days in May and June 2020. The evidence showed that the Child would have a long commute during the school year, no matter which school she went to. If the Child attended school in Wilson County, she would have a 43-minute drive to and from school during Mother's week. If the Child attended school in Williamson County, she would have a 38-minute commute to and from school during Father's week.

Neither parent wanted to spend his or her time with the Child driving to and from school, but Father expressed particular concern about the loss of quality time. Father testified that he usually made the Child breakfast in the morning and almost always had an activity planned for the evenings after he picked her up from daycare. Father was concerned that, if the Child went to school in Williamson County, he could no longer engage in these activities. But Mother believed either parent could still have quality time with the Child in the car. Mother also opposed the elimination of midweek visitation, explaining that Thursday afternoons were important for her and the Child because Mother worked from home.

Although Father admitted that it would be possible for him to continue his midweek visitation with the Child on Thursday evenings, he estimated that it would take him about an hour in rush-hour traffic to get from downtown Nashville to Mother's new home. And Father pointed out that the Child's step-mother and step-sister would have to make the journey from Wilson County if they wanted to join him. Father also believed that midweek visitation with either parent would disrupt the Child's routine after she started school.

As for the change to the Child's Thanksgiving schedule, Father explained that he wanted to take the Child out of town to see family. In the past, Mother had asked for a whole week to visit her family, but Father said that Mother was unwilling to let him have an entire week to travel the next year. To the contrary, Mother testified that she extended Father's time with the Child during Thanksgiving in 2018, but he refused to reciprocate the favor in 2019.

In its final order, the trial court found no material change in circumstance that warranted a change to the primary residential parent, and it denied Father's request to use his address for school zoning. The court found that the decision of where to send the Child to school fell within the Parenting Plan's joint-decision-making provision, but the court ordered the parties to send the Child to school at Trinity Elementary. Even so, the court found that "Mother's move to Williamson County and the increase in commute time for [the Child]" was a material change in circumstance that justified a modification to the residential parenting schedule. The court declined to adopt Father's proposed parenting plan in whole, but it eliminated the parties' midweek visitation so the parties would exercise "a true week to week schedule" and changed the Thanksgiving schedule to allow each party a full week of visitation with the Child on alternating years. The court found this new schedule was "in [the Child]'s best interests." The trial court also denied each party's request for attorney's fees.

Mother then moved to alter or amend the denial of her request for attorney's fees. Mother contended that she was entitled to an award of fees under Tennessee Code Annotated § 36-5-103(c) and the parties' MDA for successfully defending against Father's requests to change the primary residential parent and the allocation of decision-making authority. The trial court denied Mother's motion, reasoning that the award of such fees was discretionary and that both parties prevailed in part.

This appeal followed.

## ISSUES

Mother raises four issues on appeal, and Father raises five issues on cross-appeal. The issues raised by Mother are as follows:

1. Whether the trial court erred in modifying the residential parenting schedule which reduced Mother's parenting time.

2. Whether the trial court erred in modifying Thanksgiving Break.

3. Whether the trial court erred in declining to award attorney's fees to Mother for the successful defense of the Parenting Plan.

4. Whether Mother is entitled to her attorney's fees on appeal.

- 4 -

As his first issue, however, Father contends that Mother "waived nearly all issues on appeal by failing to designate them as issues in the Statement of Issues section, failing to designate issues referenced in the Argument section, and drafting skeletal arguments devoid of proper citations to the record and legal authority." We agree that Mother's brief is deficient in several respects, but we do not find that the deficiencies completely preclude our review of the trial court's decision.

Tennessee Rule of Appellate Procedure 27 governs the content of appellate briefs. Rule 27(a) requires, among other things, "an argument" that sets forth "the contentions of the appellant with respect to the issues presented . . . with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7), (a)(7)(A). "Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000).

Similarly, Tennessee Court of Appeals Rule 6 requires an argument for each issue that includes "[a] statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous . . . action is recorded," and "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found." Tenn. Ct. App. R. 6(a)(1), (4). This court will not consider any reliance on action by the trial court or assertions of fact without specific references to the record:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. R. 6(b).

The argument sections of Mother's appellate brief do not comply with the letter or spirit of these rules. In support of her first issue, Mother's brief contains seven pages of case summaries related to the modification of parenting plans. Yet Mother's brief does not apply that authority to the action of the trial court or the facts of this case. Mother's brief cites no legal authority supporting her second or fourth issues.

Mother's brief also relies on many actions by the trial court without any reference to the page or pages in the record where the trial court's actions are recorded, and it makes several assertions of fact, only six of which are supported by references to the record. Suffice it to say, the vast majority of Mother's arguments are unsupported by references to legal authority and the record.

We are mindful, however, that the Rules of Appellate Procedure and the rules of this court "should be interpreted and applied in a way that enables appeals to be considered on their merits." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009). In other words, we "should not exalt form over substance." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010)). Accordingly, we have the discretion to "suspend or relax some of the rules for good cause." *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997).

Based on the content of Mother's appellate brief and her oral argument, we exercise our discretion to address two issues raised by Mother:

(1) Whether the trial court failed to apply the applicable law, erroneously assessed the evidence, or reached an illogical result when it found that the Child's increased commute time was a material change in circumstance and implemented a parenting schedule that changed the Child's Thanksgiving schedule and effectively increased the Child's commute time.

(2) Whether the trial court erred by denying Mother's request for attorney's fees under the MDA and Tennessee Code Annotated § 36-5-103(c).

We will also address the four remaining issues raised by Father on cross-appeal, which are as follows:

(1) Whether Mother has filed a frivolous appeal with no reasonable chance of success because of her waived issues and deficiencies in her brief, thus entitling Father to an award of attorney's fees and expenses on appeal pursuant to Tenn. Code Ann. § 27-1-122?

(2) Whether the trial court erred as a matter of law in denying Father attorney's fees at trial pursuant to the MDA when (1) Father initiated the legal proceedings related to the Child's school and Mother's move by requesting mediation and filing a petition; (2) Mother sought to take unilateral action and choose the Child's school, contrary to the requirements of the Parenting Plan; and (3) Father had to take legal action to enforce the provisions in the Parenting Plan related to joint decision-making for education and the proper procedure for disagreements about the Parenting Plan, which first required mediation and then involving the court?

(3) Whether Father is entitled to attorney's fees related to the appeal pursuant to the MDA when (1) Father initiated the legal proceedings related to the Child's school and Mother's move by requesting mediation and filing a petition; (2) Mother sought to take unilateral action and choose the

Child's school, contrary to the requirements of the Parenting Plan; and (3) Father had to take legal action to enforce the provisions in the Parenting Plan related to joint decision-making for education and the proper procedure for disagreements about the Parenting Plan, which first required mediation and then involving the court?

(4) Whether Father is entitled to attorney's fees related to the appeal as the prevailing party on appeal, pursuant to Tenn. Code Ann. § 36-5-103(c) and caselaw?

## STANDARD OF REVIEW

"A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Thus, we "must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.* at 693.

Determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge," and we will not reverse such decisions absent an abuse of that discretion. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). Likewise, "the decision to grant attorney's fees under section 36-5-103(c) is largely within the discretion of the trial court and . . . , absent an abuse of discretion, appellate courts will not interfere with the trial court's finding." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017).

The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). That said, the abuse of discretion standard of review does not immunize a lower court's decision from meaningful appellate scrutiny:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.* (citations omitted). In other words, discretionary decisions require "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015) (citing *Lee Med., Inc.*, 312 S.W.3d at 524).

On the other hand, courts have "no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party." *Eberbach*, 535 S.W.3d at 478. "When such a MDA exists, it is subject to the normal rules of contractual interpretation and enforcement." *Id.* "If the MDA is determined to be a valid and enforceable agreement, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands." *Id.* "The interpretation of a contract is a matter of law that requires a de novo review on appeal." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 815 (Tenn. Ct. App. 2011) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).

## ANALYSIS

### I. MODIFICATION OF RESIDENTIAL PARENTING SCHEDULE

The crux of Mother's argument on appeal is two-fold: (1) the trial court erred by modifying the residential schedule in a way that increased the Child's commute time after finding the Child's increased commute time was a material change in circumstance; and (2) the trial court erred by changing the Child's Thanksgiving schedule without finding a material change in circumstance warranting the change.

The law on modification of residential parenting schedules is well established and governed by statute. When considering a petition to modify a residential schedule, courts must first determine whether the petitioner proved "a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C); *see Armbrister*, 414 S.W.3d at 697. If the trial court finds a material change in circumstance affecting the child's best interest, it must then "determine whether modification of the schedule[] is in the best interest of the child[], utilizing the factors at § 36-6-106(a)." *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018) (quoting *Allen v. Allen*, No. W2016-01078-COA-R3-CV, 2017 WL 908319, at *8 (Tenn. Ct. App. Mar. 7, 2017)).

The material-change requirement in § 36-6-101(a)(2)(C) provides child support and custody decisions with a modicum of finality akin to that provided by the doctrine of res judicata. *See Armbrister*, 414 S.W.3d at 698–99. Res judicata "prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* at 698 n.15 (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). So too, the material-change requirement prevents inconvenience to the litigants and the courts by preventing parties from relitigating matters related to custody "upon the same evidence and the same facts." *See id.* at 699 (quoting *Hicks v. Hicks*, 176 S.W.2d 371, 375 (Tenn. Ct. App. 1943)). By requiring a petitioner to prove a material change in circumstance affecting the child's best interest, the statute "balance[s] the interests in finality and stability against the practical reality that changes may occur after the initial custody or visitation decree which necessitate modification." *Id.* (citing *Ellis v. Carucci*, 161 P.3d 239, 243 (Nev. 2007)).

Section 36-6-101(a)(2)(C) "sets '"a very low threshold for establishing a material change of circumstances"'" when a party seeks to modify a residential parenting schedule." *Id.* at 703 (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007)). Two factors are relevant considerations in determining whether there was a material change in circumstance for the purposes of modifying a residential schedule: (1) "whether a change has occurred after the entry of the order sought to be modified"; and (2) "whether a change is one that affects the child's well-being in a meaningful way." *Drucker v. Daley*, No. M2019-01264-COA-R3-JV, 2020 WL 6946621, at *7 (Tenn. Ct. App. Nov. 25, 2020) (citations omitted).

Tennessee Code Annotated § 36-6-101(a)(2)(C) provides several nonexclusive examples of material changes, including "significant changes in the parent's living or working condition that significantly **affect parenting**." Tenn. Code Ann. § 36-6-101(a)(2)(C) (emphasis added). Thus,

> for purposes of modifying a residential parenting schedule, a petitioner can establish that a material change of circumstances affects the child's well-being in a meaningful way through evidence of changes to the petitioner's circumstances . . . that will allow more parenting time and/or a better parent-child relationship in the future.

*Drucker*, 2020 WL 6946621, at *9 (citing *Armbrister*, 414 S.W.3d at 705). Additionally, "evidence that an existing custody arrangement was proven unworkable in a significant way is sufficient to satisfy the 'material change in circumstances' standard." *Boyer*, 238 S.W.3d at 257 (citation omitted).

The material-change analysis, however, "answers only [a] threshold question" and "does not predetermine the outcome of the case." *Armbrister*, 414 S.W.3d at 705. If the court finds a material change in circumstance affecting the child's best interest, the court must then look to Tennessee Code Annotated § 36-6-106(a) to "determine how, if at all, to modify the residential parenting schedule." *Id.* at 698. Section 36-6-106(a) directs courts to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." Tenn. Code Ann. § 36-6-306(a). The goal of § 36-6-106 "is to allow both parents to enjoy the 'maximum participation possible' in the lives of their children." *Armbrister*, 414 S.W.3d at 707 (citing Tenn. Code Ann. § 36-6-106(a)); *accord Gooding v. Gooding*, 477 S.W.3d 774, 778 (Tenn. Ct. App. 2015). Stated another way, § 36-6-106(a) expresses a "legislative preference that parents receive the maximum time possible with their children." *Rountree v. Rountree*, 369 S.W.3d 122, 132 (Tenn. Ct. App. 2012) (citing Tenn. Code Ann. § 36-6-106(a)).

In summary, the material-change analysis under § 36-6-101(a)(2)(C) is used to determine when a party may invoke the court's authority to change the details of a

permanent parenting plan, and the best-interest analysis under § 36-6-106(a) is used to determine how the plan should be modified. *See Armbrister*, 414 S.W.3d at 697–98; *Brunetz*, 573 S.W.3d at 179.

The trial court found that "a material change in circumstance justifying a modification to the residential schedule exists—this being Mother's move to Williamson County and the increase in commute time for [the Child]." The court did not, however, explain why the increase in transit was a change that "affect[ed] the [C]hild's well-being in a meaningful way." *See Drucker*, 2020 WL 6946621, at *7 (citations omitted).

The trial court then found that modifying a "limited number of provisions in the parenting plan" was "in [the Child]'s best interest." Specifically, the court found it was in the Child's best interests to (1) eliminate midweek visitation; (2) change the right-of-first-refusal provision from four to 24 hours; (3) modify the designated place of exchange; and (4) alternate the full Thanksgiving break. The court modified the right of first refusal "due to the distance between the parties and the fact that both have (or will be) remarried." The court did not explain its reasoning for the other changes.

Perhaps due to the lack of reasoning in the trial court's opinion, each party interprets the court's ruling differently.

Mother construes the trial court's order as finding that the increased commute time harmed the Child's well-being. Thus, she infers that the court strove to reduce the Child's commute time by modifying the residential schedule. Accordingly, Mother contends the trial court's elimination of midweek visitation was illogical because it increased the time the Child spends in transit. As for the Thanksgiving break, Mother infers that the trial court was attempting to allow the parties to travel out of state, but she contends that the court made no finding that the current arrangement harmed the Child's well-being. She also argues that changing the Thanksgiving schedule is not in the Child's best interests because one parent will have the Child for three consecutive weeks during some years.

Father construes the trial court's order as finding that the increased commute time was simply an unavoidable fact that made the existing arrangement unworkable, and he infers that the court's modification of the residential schedule was an attempt "to reduce the frequency of exchanges, resultant disruption for the child, and maximize time with each parent." As for Thanksgiving, Father points out that the new arrangement will still give each parent equal time with the Child, and he suggests that the parties' history of co-parenting shows that the parties can work together to allow each other to see the Child even when it is not their year to spend Thanksgiving with her.

Unfortunately, neither party's interpretation is borne out by the trial court's order because the court did not explain the basis for its decision. As we have stated, "'meaningful appellate review' is only obtainable when the trial court puts forth some explanation as to how it reaches its decision in a best interest analysis." *Grissom v. Grissom*, 586 S.W.3d

387, 395 (Tenn. Ct. App. 2019) (citing *Belardo v. Belardo*, No. M2012-02598-COA-R3CV, 2013 WL 5925888, at *7 (Tenn. Ct. App. Nov. 1, 2013)). When faced with inadequate findings of fact and conclusions of law, this court is presented with two avenues: "(1) vacate and remand for the trial court to make the appropriate findings; or (2) conduct a review of the facts of the case without any deference to the trial court's ruling." *Id.* at 396 (citations omitted). Remanding for adequate findings is preferred when reviewing the facts would require this court to conduct "'archeological digs' of the record in an effort to support the trial court's decision." *Id.* (quoting *Heun Kim v. State*, No. W2018-00762-COA-R3-CV, 2019 WL 921039, at *6 (Tenn. Ct. App. Feb. 26, 2019)). This case, however, is no Pompeii.

The undisputed evidence in the record satisfies the "very low threshold for establishing a material change of circumstances" under Tennessee Code Annotated § 36-6-101(a)(2)(C). *See Armbrister*, 414 S.W.3d at 703 (quoting *Boyer*, 238 S.W.3d at 257). In particular, Mother's move to Williamson County, the Child's change of schools, and Mother's new work-from-home arrangement are "significant changes in the parent[s'] living or working condition that significantly affect parenting." Tenn. Code Ann. § 36-6-101(a)(2)(C). Mother testified that these changes would positively affect her parenting because she could spend more quality time with the Child in the afternoons. On the other hand, Father testified that these changes would harm his parenting by reducing the quality of time he has in the morning and evening.

The undisputed evidence also shows that the "existing custody arrangement was . . . unworkable." *See Boyer*, 238 S.W.3d at 257 (citation omitted). Father testified that it would be impractical—although not impossible—to exercise his two hours of visitation on Thursday evenings due to the logistics of going from downtown Nashville to Franklin and then back to Wilson County. And both Mother and Father testified that they wanted to travel out of town for Thanksgiving in past years but could not agree on informal modifications to accommodate such travel.

For these reasons, we find that Father established a material change in circumstance that "occurred after the entry of the order sought to be modified" and "affects the child's well-being in a meaningful way." *See Drucker*, 2020 WL 6946621, at *7 (citations omitted).

The evidence also establishes that the schedule modification was in the Child's best interests. Tennessee Code Annotated § 36-6-106 identifies fifteen best-interest factors, including "[t]he strength, nature, and stability of the child's relationship with each parent"; "[e]ach parent's . . . past and potential for future performance of parenting responsibilities"; "[t]he love, affection, and emotional ties existing between each parent and the child"; "[t]he child's interaction and interrelationships with siblings, other relatives and step-relatives"; "the child's involvement with the child's physical surroundings, school, or other significant activities"; "[t]he importance of continuity in the child's life";

"[e]ach parent's employment schedule"; and "[a]ny other factors deemed relevant by the court." *See* Tenn. Code Ann. § 36-6-106(a)(1) to (15).

The trial court extolled Mother and Father for their exemplary parenting in its ruling from the bench and in its written order. The court remarked that the case may have been "the most difficult case" that it had undertaken because the parties were "excellent parents." In the end, however, the court found that increasing Father's parenting time and modifying the Thanksgiving break was in the Child's best interest. The court observed twice in its written order that "[r]egardless of which school [the Child] attends, one parent or the other will have increased drive time." Because the Child will attend Trinity Elementary, the parent with the increased drive time is Father. Consequently—under either the old schedule or the new—the Child will spend over five hours of her residential time with Father in a car each week she is with him during the school year. On the other hand, the Child will spend only 30 minutes with Mother in transit each week she is with her during the school year. Moreover, Mother will have more quality time with the Child because she works from home.

Several other facts also support increasing Father's residential time. Mother acknowledged in her testimony that Mount Juliet has been the Child's home since birth. And as the court noted, "there are a number of activities for families and children in [Father]'s subdivision," and the Child is "enrolled in ballet, tumbling and soccer, all in Mount Juliet." The court also observed that the Child's step-mother was expecting a daughter soon, and it was particularly impressed by Father's testimony that "one blessing from divorce is that you really appreciate the time you have with your child."

For these reasons, we conclude that the evidence established that the schedule modification was in the Child's best interests. We also find the specific modifications made by the trial court fall within "the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *See Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

As stated, the goal of § 36-6-106 "is to allow both parents to enjoy the 'maximum participation possible' in the lives of their children." *Armbrister*, 414 S.W.3d at 707 (citing Tenn. Code Ann. § 36-6-106(a)). This goal is subservient to the Child's best interests, and it does not mean that parents will always receive equal parenting time. *See In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016) (stating that "[s]uch a custody arrangement requires 'a harmonious and cooperative relationship between both parents' to be successful" (citations omitted)). But here, there is no evidence to contradict the trial court's determination that equal parenting time is appropriate.

- 12 -

On this point, we are reminded of the late Justice Cornelia Clark's enlightened observations in *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), which are just as applicable to this case:

> We would be remiss if we did not note that the facts in this appeal are most unusual for a post-divorce proceeding because Mother and Father have established a positive and cooperative relationship with each other since the divorce. Unfortunately, courts are called upon all too often to resolve disputes between parents who refuse to communicate and cooperate with each other concerning their children because of the lingering "bitterness" of the divorce. Such bitterness tends to deepen the pain of divorce for children and subject them to unnecessary conflict. Despite their adversarial positions in this proceeding, Mother and Father are to be commended for not allowing such residual antipathy to interfere with their parenting responsibilities. Our conclusion that the proof supports the trial court's findings that Father established a material change in circumstances and that modifying the residential parenting schedule is in the children's best interests certainly should not be viewed as calling Mother's parenting skills into question. To the contrary, the proof overwhelmingly establishes . . . that Mother is "a great Mom." The modification does, however, allow Father to move closer to the statutory goal, which is to allow both parents to enjoy the "maximum participation possible" in the lives of their children. Recognizing their combined efforts to date, we encourage these parents to continue focusing upon, and working together to foster, the best interests of their children.

*Id.* at 707 (citations omitted).

## II. ATTORNEY'S FEES

Both Mother and Father contend that the trial court erred by denying their requests for an award of attorney's fees under the fee-shifting provision of the MDA. Mother also contends that she was entitled to an award of fees under Tennessee Code Annotated § 36-5-103(c), and Father contends he is entitled to attorney's fees on appeal under §§ 36-5-103(c) and 27-1-122.

"[W]hen confronted with a request for fees under both contractual and statutory authority, our courts should look to the parties' contract first before moving on to any discretionary analysis under statutes such as section 36-5-103(c) and section 27-1-122." *Eberbach*, 535 S.W.3d at 478. "Even if the court determines that an award of attorney's fees is mandated by the terms of the MDA, the court still should also review the claims for fees or expenses under any applicable statutory authority." *Id.* at 479.

A. Marital Dissolution Agreement

Mother asserts that she was entitled to an award of her trial attorney's fees under the MDA because she had to "enforce her rights" by defending against Father's petition. Father asserts that he is entitled to an award of his trial and appellate attorneys' fees under the MDA because he had to enforce the Parenting Plan after Mother attempted to unilaterally send the Child to school in Williamson County.

Reviewing requests for fees under an MDA involves a three-step process:

Courts . . . should first determine whether the parties have a valid and enforceable MDA that governs the award of attorney's fees for the proceeding at bar. If so, our courts must look to the actual text of the provision and determine whether the provision is mandatory and applicable. If so, the MDA governs the award of fees, and our courts must enforce the parties' contract.

*Eberbach*, 535 S.W.3d at 478–79.

The Parenting Plan was incorporated by reference as a part of the parties' "Agreement" in the MDA, which provides in relevant part as follows:

26. **FUTURE LEGAL PROCEEDINGS**. . . . If either party reasonably institutes legal proceedings to procure the enforcement of any provision of this Agreement, then he will also be entitled to a judgment for reasonable expenses, including attorney fees, incurred in prosecuting the action.

Based on this language, we find the MDA does not govern the award of attorney's fees for the proceeding at bar. The MDA mandates the award of attorney's fees incurred in prosecuting an action "to procure the enforcement" of the MDA and Parenting Plan. "Enforcement" is "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." Black's Law Dictionary (11th ed. 2019). Father instituted proceedings to modify the Parenting Plan, but neither party instituted proceedings to compel compliance with the Parenting Plan.

For this reason, we find neither party was entitled to an award of attorney's fees under the MDA.

B. Tennessee Code Annotated §§ 36-5-103(c) and 27-1-122

Mother also contends that she was entitled to an award of her trial attorney's fees under Tennessee Code Annotated § 36-5-103(c) because "Father filed a petition in which he made false allegations against Mother in bad faith for the purpose of attempting to change custody of the minor child." Father contends he is entitled to an award of his

appellate attorneys' fees under §§ 36-5-103(c) and 27-1-122 because he prevailed on appeal, Mother's appeal was frivolous, and Father acted in good faith.

Section 36-5-103(c) allows for the award of attorney's fees to the prevailing party in proceedings to modify a permanent parenting plan:

> A prevailing party may recover reasonable attorney's fees . . . from the nonprevailing party in any . . . proceeding to enforce, alter, change, or modify any . . . provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children . . . .

Tenn. Code Ann. § 36-5-103(c). When considering a request for appellate attorney's fees under § 36-5-103, we consider three nonexclusive factors: (1) "the ability of the requesting party to pay his or her own attorney's fees"; (2) "the requesting party's success on appeal"; and (3) "whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004) (citing *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn. Ct. App. Nov. 17, 2004)).

Section 27-1-122 allows for the award of appellate attorney's fees and expenses against a party who files a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. A frivolous appeal lacks merit or "has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). An appeal may be frivolous when the brief "is so severely deficient that this Court is unable to determine even what issues [the appellant is] attempting to raise on appeal." *Murray v. Miracle*, 457 S.W.3d 399, 404 (Tenn. Ct. App. 2014).

"[T]he decision to grant [trial] attorney's fees under section 36-5-103(c) is largely within the discretion of the trial court and that, absent an abuse of discretion, appellate courts will not interfere with the trial court's finding." *Eberbach*, 535 S.W.3d at 475–76. Similarly, "when appellate attorney's fees are requested pursuant to statutes like section 27-1-122 and section 36-5-103(c), which expressly permit the court to exercise its discretion, the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate." *Id.*

- 15 -

In its denial of Mother's motion to alter or amend, the trial court explained that it denied Mother's request for an award of her trial attorney's fees because Father was following the Parenting Plan when he commenced the action:

> In the foregoing matter, both parties prevailed in part. Once the parents disagreed about the school and were unable to resolve the issue in mediation, Father either had to file a petition or lay down, and the latter was not an option. Father had to seek relief from the Court as that is how the parenting plan is designed. The Court does not fault Father for filing his petition.

We find no error in the trial court's decision and affirm its denial of Mother's request for an award of her trial attorney's fees under Tennessee Code Annotated § 36-5-103(c). And after considering the relevant factors, we also respectfully deny Father's request for an award of his appellate attorneys' fees under § 36-5-103(c).

As for Father's request for fees under § 27-1-122, we do not find Mother's appeal so devoid of merit as to warrant an award. Although we have concluded that Mother is not entitled to appellate relief, Mother's brief raised legitimate issues with the court's order. For this reason, we exercise our discretion to deny Father's request for an award of his appellate attorneys' fees under Tennessee Code Annotated § 27-1-122.

### IN CONCLUSION

We affirm the judgment of the trial court and remand this matter with costs of appeal assessed against Heather Anne (Coats) Emch.

_____
FRANK G. CLEMENT JR., P.J., M.S.