IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 7, 2025 Session

# YONAS M. TESHALE v. FANCHAISAVANH LANEXANG

**Appeal from the Juvenile Court for Rutherford County**
**No. 7727C    Travis Macon Lampley, Judge**
_____

## No. M2024-00815-COA-R3-JV
_____

This appeal concerns a father's petition to modify the permanent parenting plan for his two children. After an evidentiary hearing, the juvenile court magistrate entered a plan that modified the residential parenting schedule and gave the mother sole decision-making authority over all educational and non-emergency health care decisions. The father argues that the magistrate did not maximize his participation in the children's lives as required by Tennessee Code Annotated § 36-6-106(a) and that there was no basis for modifying the allocation of decision-making authority. We affirm the judgment in all respects. We have also determined that the mother, as the prevailing party, is entitled to recover her reasonable and necessary attorney's fees and expenses incurred on appeal under Tennessee Code Annotated § 36-5-103(c), and remand for the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

L. Jeffery Payne and Laurie Young, Murfreesboro, Tennessee, for the appellant, Yonas M. Teshale.

George Travis Hawkins, Chattanooga, Tennessee, and David L. Scott, Murfreesboro, Tennessee, for the appellee, Fanchaisavanh Lanexang.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Yonas M. Teshale ("Father") and Fanchaisavanh Lanexang ("Mother") are the parents of two minor children: Tahj, born in April 2009, and Taliyah, born in March 2020 (collectively, "the Children").

A permanent parenting plan concerning Tahj was entered in 2013 in the Juvenile Court for Rutherford County. After Taliyah's birth in 2020, Father filed a petition to modify the 2013 permanent parenting plan for Tahj and to establish a parenting plan for Talijah. Mother opposed modification of the 2013 plan, and she asked the court to adopt the existing residential schedule for Taliyah.

Under the 2013 plan, Father enjoyed residential time with Tahj on certain holidays, every other week from Wednesday evening to Thursday evening, and every other week from Friday evening to Sunday evening. Father also had residential time for two weeks every summer, during both spring and fall breaks on even-numbered years, and every year from December 25th to the start of school in January. According to the 2013 plan, this schedule resulted in 131 days of residential time for Father and 234 days for Mother. The plan also gave the parties joint decision-making authority over major decisions about education, non-emergency health care, religious upbringing, and extracurricular activities.

Father's Petition to Modify was heard by a juvenile court magistrate over three days in August 2023, January 2024, and March 2024. The magistrate heard testimony from five witnesses, including Father, Mother, and Tahj, who was then 14 years old.

In his written order, the magistrate found a material change in circumstance due to Tahj's age and Taliyah's birth. And after considering the factors in Tennessee Code Annotated § 36-6-106(a), the magistrate determined that modification of the residential parenting schedule and reallocation of decision-making authority was in Tahj's and Taliyah's best interest.

Like the 2013 plan, the new plan gave Father residential time with the Children on certain holidays, during both spring and fall breaks on even-numbered years, and every year from December 25th to the start of school in January. But the magistrate eliminated Father's bi-weekly Wednesday night visitation because Father would have only a few hours with the Children before they had to go to bed on Wednesday and due to difficulties that Father had getting Tahj to school on Thursday mornings. Still, the magistrate gave Father more weekend visitation than he previously had: Instead of seeing the Children every other weekend, Father would have them from Friday evening to Sunday evening on the first and third weekend of each month and from Friday evening to Saturday evening on the second weekend of each month. Thus, Father would see the Children on 36 weekends per year under the new schedule as opposed to 26 weekends under the old schedule. The magistrate also changed the summer residential schedule, giving Father every other week until the Children returned to school. According to the 2024 plan, this schedule resulted in 95 days of residential time for Father and 270 days for Mother.

As for decision-making authority, the magistrate found it was in the Children's best interests to give Mother sole authority over all non-emergency health care decisions because the parties could not "get along when making joint decisions." The magistrate also

gave Mother sole decision-making authority over educational decisions "for the same reason and since the [C]hildren are residing with Mother."

The new parenting plan became effective upon entry in September 2024. This appeal followed.

## ISSUES

Father raises two issues on appeal, which we have slightly restated as:

(1) Whether the magistrate exceeded his discretion by reducing Father's parenting time.

(2) Whether the magistrate exceeded his discretion by awarding sole decision-making authority for educational and non-emergency health care decisions to Mother.

## STANDARD OF REVIEW

Whether a modification of a parenting plan serves a child's best interest is a factual question. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692–93 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Thus, we presume that the trial court's findings on this matter are correct unless the evidence preponderates against them. *Id.*; *see* Tenn. R. App. P. 13(d). For evidence to preponderate against a finding of the trial court, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)).

Furthermore, "[d]etermining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *Armbrister*, 414 S.W.3d at 693). Discretionary decisions are reviewed under the "abuse of discretion" standard of review. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Under this standard, we must determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id*.

## ANALYSIS

### I. RESIDENTIAL PARENTING SCHEDULE

Father challenges the magistrate's decision on two main grounds. One, he asserts that the magistrate failed to comply with Tennessee Code Annotated § 36-6-106(a) which mandates "a custody arrangement that permits both parents to enjoy the maximum

participation possible in the life of the child." He also contends that the magistrate "failed to follow the preference of the parties' teenage son" and reduced Father's residential parenting time. We find both contentions unpersuasive because the magistrate's order expressly states that the magistrate considered Tahj's testimony, § 36-6-106(a) does not mandate equal parenting time, and the 2024 plan gives Father more parenting time with the Children than the 2013 plan.

When calculating the number of days a parent will spend with their child under a parenting plan, our courts use the definition of "day" promulgated in the child support guidelines. *See In re Grace N.*, No. M2014-00803-COA-R3-JV, 2015 WL 2358630, at *5 (Tenn. Ct. App. May 14, 2015). That definition provides:

> For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10).

Using the above definition and applying it to the calendar for 2026, Father was not awarded 131 days of residential time as the 2013 parenting plan indicated. He was awarded only 106 days. Likewise, the 2024 parenting plan, rather than awarding Father 95 days of residential time, awarded him 125 days.[1] Thus, contrary to Father's contention, the new parenting plan increases rather than reduces Father's parenting time. Nonetheless, we will address Father's argument that the new plan fails to maximize his participation in the lives of the Children.

---

[1] For the purposes of our calculation, we have taken judicial notice of the 2025–2026 and 2026–2027 academic calendars for Rutherford County Schools. *See* Rutherford County Schools, *2025–2026 Academic Calendar* (Mar. 22, 2025), https://4.files.edl.io/7c8a/05/28/25/153815-e0a9e9f2-fbfe-450c-9454-516eb2e659c1.pdf [https://perma.cc/FM8C-ZMRH]; Rutherford County Schools, *2027–2028 Academic Calendar* (Oct. 16, 2025), https://4.files.edl.io/caf9/10/28/25/175459-ce6a2997-ebf6-42ef-8d88-3275084950b1.pdf [https://perma.cc/37C4-F6JV].

We note that the 2024 plan contains several provisions that will change the number of days Father receives from year to year. Those provisions include (1) giving Mother every "fifth weekend" on months that have one; (2) giving each parent a full weekend with the Children if the parent's birthday falls on a Saturday; (3) giving each Monday holiday to the parent who has the Children during the preceding weekend; and (4) giving each parent the right to take the Children out of the country for two consecutive weeks during the summer.

Tennessee Code Annotated § 36-6-106(a) provides:

> . . . In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors.

Tenn. Code Ann. § 36-6-106(a). In other words, Tennessee courts must "fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012). This requirement "reflects a public policy in favor of allowing the child ample time with both parents, which is a paramount consideration in all Tennessee parenting plan decisions." *Id*. But it does not "mandate that the trial court establish a parenting schedule that provides equal parenting time." *Gooding v. Gooding*, 477 S.W.3d 774, 784 n.7 (Tenn. Ct. App. 2015)). Furthermore, the "'maximum participation possible' principle does not alter or diminish the trial court's broad discretion in fashioning permanent parenting plans." *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *6–7 (Tenn. Ct. App. Aug. 29, 2019).

We have emphasized that "the best interest of the child, not the 'maximum participation possible' concept, remains the primary consideration." *Id*. Thus, "Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life **only to the extent that doing so is consistent with the child's best interests**." *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016) (emphasis added).

When determining whether modification of a residential parenting schedule is in the best interests of the child, courts use the factors in Tennessee Code Annotated § 36-6-106(a). *See Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). Determining a child's best interest "is a fact-sensitive inquiry, and each case is unique." *In re Bailey J.*, No. E2021-00446-COA-R3-PT, 2021 WL 5575788, at *5 (Tenn. Ct. App. Nov. 30, 2021) (citing *White v. Moody*, 171 S.W.3d 187, 193–94 (Tenn. Ct. App. 2004)). As we have explained:

> Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005).

In fashioning the 2024 parenting plan, the magistrate relied on the following best interest factors:

(1)      The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

.     .     .

(4)      The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)      The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)      The love, affection, and emotional ties existing between each parent and the child;

.     .     .

(9)      The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)     The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

.     .     .

(13)     The reasonable preference of the child if twelve (12) years of age or older. . . . ;

.     .     .

(17)     Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

In his order, the magistrate explicitly addressed every factor in § 36-6-106(a) and made specific findings regarding each. The magistrate found that the Children have strong bonds with Mother and Father and Mother's and Father's family. *See id.* § 36-6-106(a)(6), (9). The magistrate also found that the Children have lived with Mother for most of their lives and that Mother has performed most of the parenting responsibilities. *See id.* § 36-6-106(a)(1), (5). The magistrate noted that Tahj wanted to spend more time with Father, *see id.* § 36-6-106(13), but the magistrate expressed concerns over Father's ability to provide

financially for the Children, Father's willingness to work with Mother to provide dental care for the Children, and Father's history of failing to exercise his Wednesday visitation with Tahj, *see id*. § 36-6-106(a)(4), (9), (10).

Father does not dispute these findings, and the evidence does not preponderate against them. Still, Father maintains that the magistrate "failed to follow the preference of the parties' teenage son." *See id*. § 36-6-106(a). A child's preference, however, "is only one factor and the 'paramount consideration in a custody case is the best interest of the child.'" *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992) (citing *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)). Here, Tahj testified that he wanted to spend more time with Father than he did under the 2013 parenting plan. In his order, the magistrate found this testimony "compelling" and said that he had taken Tahj's preference "into consideration with regard to the parenting schedule." Accordingly, the magistrate crafted a residential schedule that gives Father more time with Tahj.

For these reasons, we cannot say that the magistrate applied an incorrect legal standard, reached an illogical conclusion, based its decision on an incorrect assessment of the evidence, or used reasoning that caused an injustice. *See Kelly*, 445 S.W.3d at 691–92. Furthermore, the new residential schedule follows the policy behind the maximum-participation principle, which is to allow "the child ample time with both parents." *Rountree*, 369 S.W.3d at 129.

## II. DECISION-MAKING AUTHORITY

Next, Father asserts that the magistrate failed "to identify or apply the controlling statutory factors" when determining whether to modify the allocation of decision-making authority.

Tennessee Code Annotated § 36-6-404(a)(5) requires trial courts to "[a]llocate decision-making authority to one (1) or both parties regarding the child's education, health care, extracurricular activities, and religious upbringing." And § 36-6-407(b) states that "[t]he court **shall** order sole decision making to one (1) parent when it finds," *inter alia*, that "[o]ne (1) parent is opposed to mutual decision making, and such opposition is reasonable in light of the parties' inability to satisfy the criteria for mutual decision-making authority." (Emphasis added). Those criteria include "[t]he history of participation of each parent in decision making" and "[w]hether the parents have demonstrated the ability and desire to cooperate with one another in decision making." *Id*. § 36-6-407(c).

The allocation of decision-making authority is "peculiarly within the broad discretion of the trial judge; accordingly, we review these decisions under an abuse of discretion standard." *Erdman v. Erdman*, No. M2018-01668-COA-R3-CV, 2019 WL 6716305, at *6 (Tenn. Ct. App. Dec. 10, 2019) (citing *Christie v. Christie*, No. M2012-02622-COA-R3-CV, 2014 WL 4293966, at *2 (Tenn. Ct. App. Aug. 28, 2014)).

Father maintains that the magistrate's failure to cite the factors in § 36-6-407(c) is fatal to its decision. We disagree. A trial court's failure to cite the statutory factors on which its decision is based does not require reversal when the basis for its decision is clear. *See Lanier v. Lanier*, No. M2014-02293-COA-R3-CV, 2016 WL 7176980, at *11 (Tenn. Ct. App. Dec. 9, 2016) ("While the trial court did not cite Tennessee Code Annotated section 36-6-407 in rendering its decision, the evidence recounted by the court in its discussion of the factors pertaining to the children's best interest . . . . supports the decision to award Father sole decision-making authority."); *Gergel v. Gergel*, No. E2020-01534-COA-R3-CV, 2022 WL 1222945, at *41 (Tenn. Ct. App. Apr. 26, 2022) (court did not err by failing to reference the factors in § 36-6-407 when the court made relevant findings of fact).

Father also cites *In re Lennon R.*, No. M2018-00541-COA-R3-JV, 2019 WL 2226007, at *13 (Tenn. Ct. App. May 23, 2019) for the proposition that a trial court's failure to make specific findings concerning the basis for its allocation of decision-making authority is reversible error. In that case, we vacated the court's award of sole decision-making authority to the father when the court's order lacked "specific findings concerning the basis of its decision." *Id*. at *12. We reasoned, "In the absence of findings in the trial court's order, this Court cannot glean its reason for awarding Father sole decision-making authority nor can we discern whether the trial court considered the Tennessee Code Annotated section 36-6-407(c) factors in reaching its decision." *Id*. at *13.

We find this case is distinguishable from *In re Lennon R.* Unlike the trial court in that case—which made **no** findings to support its decision—the magistrate in this case found that Mother should have sole decision-making authority for non-emergency and educational decisions because "the parties cannot get along when making joint decisions." *See* Tenn. Code Ann. § 36-6-407(c). And in its best-interests analysis, the magistrate found that "Father delayed dental care for [Taliyah] without justification."

Still, Father asserts that the magistrate's conclusions are contradicted by the record. Again, we disagree.

Regarding non-emergency medical decisions, Mother testified that she and Father couldn't agree on a dentist for the Children. Father wanted them to see his dentist, but Mother wanted Taliyah to see a pediatric dentist. Then, once Mother got Father to agree on a dentist, Father opposed the dentist's recommendation that Taliyah get a cavity filled. At trial, Father was unable to explain why he opposed this routine procedure other than saying he wanted to wait until Taliyah turned five years old to revisit the matter. Mother testified that, because of Father's stalling, Taliyah's cavity had grown to the point that she needed a crown. Mother also testified that she and Father disagreed on whether Taliyah would get a COVID-19 vaccination, and Father testified that he and Mother could not agree on whether to quarantine Tahj after an out-of-state trip during the COVID-19 Pandemic. Thus, the record supports the magistrate's conclusion that the parties could not get along when making non-emergency medical decisions.

In contrast, there was little evidence that the parties could not cooperate when making educational decisions. The only acknowledged conflict between the parties regarding the Children's education relates to Father's desire that Taliyah stay with him instead of attending preschool and go to kindergarten in Davidson County, where Father lives, rather than Rutherford County, where Mother lives. Nevertheless, the magistrate made the specific finding that "the parties cannot get along when making joint decisions," and the evidence does not preponderate against this finding.[2] Recognizing that the allocation of decision-making authority is "peculiarly within the broad discretion of the trial judge," we defer to the magistrate's decision on this issue. *See Erdman*, 2019 WL 6716305, at *6; *see also Christie*, 2014 WL 4293966, at *2.

For these reasons, we affirm the magistrate's award of sole decision-making authority to Mother for non-emergency medical decisions and educational decisions.

## III. ATTORNEY'S FEES

Mother seeks to recover her attorney's fees and expenses incurred on appeal. Tennessee Code Annotated § 36-5-103(c) gives trial courts discretion to award reasonable attorney's fees to the prevailing party in proceedings "to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. § 36-5-103(c).

Section 36-5-103(c) also applies to awards of attorney's fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008) (citations omitted). The award of appellate attorney's fees under § 36-5-103(c) is discretionary. *See id.* "In exercising our discretion, we consider: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors." *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)). When a party requests an award of appellate attorney's fees, we may (1) deny the request; (2) grant the request and set the amount; (3) grant the request and remand to the trial court to set the amount; or (4) remand to the trial court for determining whether the award should be made and, if so, in what amount. *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 411 n.2 (Tenn. 2006).

---

[2] When reviewing a trial court's discretionary decision we are to consider, inter alia, whether the factual basis for the decision is properly supported by evidence in the record. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Exercising our discretion, we conclude that Mother should be awarded her attorney's fees incurred on appeal and remand to the trial court to set the amount.

**IN CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed, and this matter is remanded to the trial court to award Mother a monetary judgment against Father for her reasonable attorney's fees and expenses incurred on appeal. Costs of appeal are assessed against the appellant, Yonas M. Teshale.

_____

FRANK G. CLEMENT JR., P.J., M.S.